(No. 61705.—

ALMA K. HARRIS, Appellant, v. MANOR HEALTHCARE CORPORATION *et al.*, Appellees.

*Opinion filed February 21, 1986.*

354

John T. Phipps, of John T. Phipps Law Offices, P.C., of Champaign, for appellant.

Robert P. Moore and Richard R. Harden, of Champaign, for appellee Manor Healthcare Corporation.

John E. Guy, of Chicago (Patrick E. Maloney, Robert S. Soderstrom, Shaun McParland and Sara E. Cook, of McKenna, Storer, Rowe, White & Farrug, of counsel), for *amicus curiae* Illinois Defense Counsel.

George M. Elsener and Carol W. Bertoux, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Alma K. Harris, brought this action against Manor Healthcare Corporation (defendant) for injuries she allegedly received while she was a resident at defendant's Urbana, Illinois, nursing home. Reduced to its most essential allegations, her complaint alleged that soon after becoming a resident at defendant's nursing home in June 1983, she developed a decubitus ulcer, or bed sore, on her left heel, and that, as a result of improper care and treatment by defendant's staff, the ulcer became infected, necessitating the amputation of her leg.

Count I of plaintiff's five-count complaint was premised on liability under the Nursing Home Care Reform Act of 1979 (the Act) (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—101 *et seq.*) and sought treble damages and attorney fees under section 3—602 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—602). Count II alleged that plaintiff's injuries were caused by defendant's wilful and wanton misconduct, and it sought both compensatory and punitive damages. The remaining counts alleged negligence, breach of contract and breach of warranty.

Defendant moved to dismiss count I of plaintiff's complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9)), contending that the treble-damages provision of the Act was unconstitutional. The circuit court of Champaign County found that sections 3—603 and 3—604 of the Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 4153—603, 4153—604) authorized the recovery of both treble damages under section 3—602 of the Act and common law punitive damages. The court, reasoning that

treble damages are the equivalent of punitive damages, concluded that recovery of both amounted to a double recovery for the same wrong. The court held that because the Act authorized a double recovery of punitive damages, the treble-damages provision of the Act violated due process and was, therefore, invalid. Accordingly, the court granted defendant's motion and dismissed count I of plaintiff's complaint with prejudice. Plaintiff appealed directly to this court pursuant to Rule 302(a)(1) (94 Ill. 2d R. 302(a)(1)). The Illinois Trial Lawyers Association and the Illinois Defense Counsel each filed a brief *amicus curiae* in this case.

The primary issue is whether the civil damages provisions of the Act violate due process by authorizing a double recovery for a single injury. Plaintiff construes the Act as not authorizing recovery of both treble damages and common law punitive damages. Defendant maintains, however, that the Act allows injured residents to recover both treble and punitive damages. It asserts that treble damages are punitive in nature and contends that recovery of both treble and punitive damages amounts to a double recovery for a single injury in violation of due process. Defendant also contends that the Act violates due process because it allows plaintiffs to obtain treble damages for "merely negligent conduct." Further, defendant argues that the treble-damages provision violates the special-legislation clause of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 13), because it grants a remedy to private nursing home residents which is not available to hospital patients, residents of State-operated nursing homes, or residents of similar institutions even though those persons also are dependent upon the facility operators for personal care.

The General Assembly enacted the Nursing Home Care Reform Act of 1979 (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—101 *et seq.*) amid concern over reports of "in-

adequate, improper and degrading treatment of patients in nursing homes." (Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 184 (statement of Senator Karl Berning).) The Act, described by a principal sponsor as a "full reform of the nursing home industry" (Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 181 (statement of Senator Richard M. Daley)), repealed the Nursing homes, sheltered care homes and homes for the aged Act (Ill. Rev. Stat. 1977, ch. 111½, par. 35.16 *et seq.*) and replaced it with a comprehensive statute which established standards for the treatment and care of nursing home residents; created minimum occupational requirements for nurses aides; and expanded the power of the Illinois Department of Public Health to enforce the provisions of the Act. See generally Daley and Jost, *The Nursing Home Reform Act of 1979*, 68 Ill. B.J. 448 (1980).

A central component of the Act is the resident's "bill of rights." Under part I of article II of the Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 4152—101 through 4152—113), residents are guaranteed certain rights. These rights include: the right to manage their own financial affairs; the right to refuse treatment; the right to the free exercise of religion; the right to private noncensored mail and telephone conversations; the right to refuse to perform uncompensated labor; the right to inspect personal records; the right to present grievances without retaliation; the right to privacy with respect to medical and personal care; and the right not to be subjected to abuse or neglect by nursing home personnel. Ill. Rev. Stat. 1983, ch. 111½, pars. 4152—101 through 4152—113.

To ensure that nursing homes comply with the Act, the General Assembly gave the Department of Public Health expanded regulatory and enforcement powers, and created civil as well as criminal penalties for viola-

tions of the Act. (See *People v. Gurell* (1983), 98 Ill. 2d 194.) In addition to the public enforcement provisions, nursing home residents were given several statutory remedies against nursing homes. Senator Daley, in explaining the rationale for including private remedies in the Act, remarked after its passage that, "[d]espite the best of intentions, the government can only do so much to regulate nursing home care. On the other hand, residents are always in the facilities and their friends, relatives and community supporters can regularly keep an eye on the conditions existing in facilities." Daley and Jost, *The Nursing Home Reform Act of 1979*, 68 Ill. B.J. 448, 453 (1980).

Under section 3—702 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—702), any person can file a complaint with the Department of Public Health. The Department is required to investigate all complaints and to promptly inform the complainant of its findings. If a complainant is dissatisfied with the findings, he or she can request a hearing before the Department. Section 3—503 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—503) provides that, when an emergency exists, a resident, his or her representative, or the resident's next of kin may petition the circuit court to place the facility under the control of a receiver. Section 3—603 (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—603) allows a resident to maintain an action against a facility for declaratory or injunctive relief. Finally, Illinois has joined several States in giving residents a cause of action for damages against nursing home owners and operators for violations of the statute. Ill. Rev. Stat. 1983, ch. 111½, par. 4153—602. See also Conn. Gen. Stat. Ann. sec. 19a—550(b) (Supp. 1985); Mass. Gen. Laws Ann. ch. 111, sec. 70E (Supp. 1985); Mo. Rev. Stat. sec. 198.093 (1983); N.J. Rev. Stat. sec. 30:13—8 (1981); N.Y. Pub. Health Law sec. 2801—d (McKinney 1985); Ohio Rev. Code Ann. sec. 3721.17(I)

(Page Supp. 1984); Okla. Stat. Ann. tit. 63, sec. 1—1939 (1984); W. Va. Code sec 16—5C—15(c)(1985); Hoffman and Schreier, *A Private Right of Action Under Missouri's Omnibus Nursing Home Act,* 24 St. L.U.L.J. 661 (1981); Butler, *Nursing Home Quality of Care Enforcement: Part I - Litigation by Private Parties,* 14 Clearinghouse Rev. 622 (1980).

Section 3—602, the section being challenged by defendant, provides a remedy for violations of the residents' rights provisions found in article II, part I, of the Act. Under the section, residents can recover treble damages and attorney fees for violations of their rights. Section 3—602 provides:

"The licensee shall pay 3 times the actual damages, or $500, whichever is greater, and costs and attorney's fees to a facility resident whose rights, as specified in Part I of Article II of this Act, are violated." (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—602.)

Section 3—601 of the Act further provides that the "owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—601.) An action for damages to enforce the residents' rights provisions of the Act may be brought as a class action. (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—604.) In addition to actions for damages, residents may maintain actions for declaratory and injunctive relief. Ill. Rev. Stat. 1983, ch. 111½, par. 4153—603.

Plaintiff's complaint alleged in relevant part that defendant violated section 2—107 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 4152—107), which provides that an "owner, licensee, administrator, employee or agent of a facility shall not abuse or neglect a resident." It was further alleged that as a result of defendant's violation of section 2—107, a decubitus ulcer on plaintiff's

left heel became infected, necessitating amputation of her leg. In count I, plaintiff sought treble damages, costs and attorney fees pursuant to section 3—602. In count II plaintiff alleged that her injuries were caused by defendant's "wilful and wanton" misconduct, and she sought compensatory and punitive damages.

Plaintiff and defendant agree that recovery of both treble damages pursuant to section 3—602 and punitive damages for wilful and wanton misconduct would, under the circumstances of this case, amount to a double recovery for a single injury. It is undisputed that plaintiff seeks recovery for only one injury, and both parties assume that treble damages are the equivalent of punitive damages. Although we believe that section 3—602 was enacted primarily to encourage private enforcement of the Act and to compensate residents for violations of their rights, we agree that the section also must be construed as being punitive. The obvious purpose of allowing plaintiffs to recover three times their actual damages, apart from encouraging utilization of the remedy, is to punish violators and to discourage future violations. The conclusion that section 3—602 has a punitive purpose is further supported by the fact that it establishes a minimum recovery of $500, much like a fine or a civil penalty. As such, we agree with the parties that the treble-damages provision of the Act is punitive in nature (see *Atchison, Topeka & Santa Fe Ry. Co. v. People* (1907), 227 Ill. 270, 279; *People ex rel. Fahner v. Climatemp, Inc.* (1981), 101 Ill. App. 3d 1077, 1080-81), and that recovery of both treble damages and common law punitive damages would, under the circumstances of this case, constitute a double recovery for a single injury. *Cf. People ex rel. Fahner v. Climatemp, Inc.* (1981), 101 Ill. App. 3d 1077; *Johnson v. Tyler* (1979 Iowa), 277 N.W. 2d 617; *John Mohr & Sons, Inc. v. Jahnke* (1972), 55 Wis. 2d 402, 198 N.W. 2d 363.

Plaintiff asserts that she is not seeking a double recovery by pleading both a violation of the Act and a cause of action for wilful and wanton misconduct. She maintains that the inclusion of multiple theories of recovery in the same complaint is allowable under sections 2—603 and 2—613 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—603, 2—613). She further contends that a double recovery can be easily avoided by requiring an election of remedies or by entering judgment in the alternative. Defendant, on the other hand, contends that sections 3—603 and 3—604 of the Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 4153—603, 4153—604) expressly authorize the recovery of both statutory treble damages and common law punitive damages. It asserts that because the Act removes any judicial discretion to limit a double recovery of punitive damages, the Act violates due process.

Section 3—603 of the Act provides: "A resident may maintain an action under this Act for any other type of relief, including injunctive and declaratory relief, permitted by law." (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—603.) Without elaborating, defendant contends that section 3—603 authorizes the recovery of treble damages and common law punitive damages.

It is well established that the function of the courts in construing statutes is to ascertain and give effect to the intent of the legislature. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266; *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) In ascertaining the intent of the legislature, the court examines the entire statute and seeks "to determine the objective the statute sought to accomplish and the evils it desired to remedy." *Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341. See also *Fitzsimmons v. Norgle* (1984), 104 Ill. 2d 369, 373; *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 510.

The courts also will avoid a construction of a statute

which would render any portion of it meaningless or void. (*People v. Tarlton* (1982), 91 Ill. 2d 1, 5; *People v. Lutz* (1978), 73 Ill. 2d 204, 212.) The courts presume that the General Assembly, in passing legislation, did not intend absurdity, inconvenience or injustice (*Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561), and a statute will be interpreted so as to avoid a construction which would raise doubts as to its validity (*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363). "It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can be reasonably done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged." *Sayles v. Thompson* (1983), 99 Ill. 2d 122, 125. See also *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 389.

After applying the above principles to section 3—603, we cannot agree with defendant that the section authorizes recovery of both treble damages and common law punitive damages. Section 3—603 provides that a resident "may maintain an action under this Act for any other type of relief *** permitted by law." (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—603.) The word "other" means "[d]ifferent or distinct from that already mentioned." (Black's Law Dictionary 992 (5th ed. 1979).) Thus, the section makes available to plaintiffs several remedies or actions for violations of the Act, which are "different or distinct" from the damages remedy already provided for in section 3—602. These remedies include injunctive and declaratory relief. As such, we believe that the sole purpose of section 3—603 is to provide plaintiffs with a choice of remedies, and we do not think that the legislature intended to authorize a double recovery by the inclusion of the section in the Act. Section 3—

603 does not expressly authorize a double recovery, and, in the absence of an express authorization, we are unwilling to infer as much, since to do so would render the statue invalid. (See *Sayles v. Thompson* (1983), 99 Ill. 2d 122, 125; *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363.) Therefore, we do not construe section 3—603 as authorizing a double recovery of punitive damages.

Defendant also contends that section 3—604 of the Act authorizes a double recovery of punitive damages. Section 3—604, which governs class action suits brought under the Act, states in relevant part: "The remedies provided in Sections 3—601 through 3—607, are in addition to and cumulative with any other legal remedies available to a resident." (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—604.) Defendant asserts that section 3—604, by specifying that the treble-damages remedy is "in addition to and cumulative with" common law remedies, removes any judicial discretion to limit recovery of both treble damages and common law punitive damages.

When a statute employs words having a well-known legal significance, courts will, in the absence of any expression to the contrary, assume that the legislature intended the words to have that meaning. (*Department of Public Works & Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 552; *People ex rel. Mayfield v. City of Springfield* (1959), 16 Ill. 2d 609, 614-15.) The term "cumulative remedy" has been consistently construed to mean "a remedy created by statute in addition to one which still remains in force." (*Chicago & Northwestern Ry. Co. v. City of Chicago* (1893), 148 Ill. 141, 160. See also *People v. Santa Fe Federal Savings & Loan Association* (1946), 28 Cal. 2d 675, 171 P.2d 713; *State v. Turner* (1975), 194 Neb. 252, 231 N.W.2d 345; *Bowles v. Neely* (1911), 28 Okla. 556, 115 P. 344; *Wood v. Honeyman* (1946), 178 Or. 484, 169 P.2d 131; *State v. Laredo Ice*

*Co.* (1903), 96 Tex. 461, 73 S.W. 951; *State ex rel. Whitmore v. Barboglio* (1924), 63 Utah 432, 226 P. 904; Black's Law Dictionary 343 (5th ed. 1979).) Thus, to provide that a remedy is a "cumulative" one is just another way of stating that the remedy is not exclusive. The sole purpose of such a provision is to preserve other legal remedies so that a plaintiff may choose between them, not to authorize a double recovery for a single injury. "The well-established rule *** is that where a statute gives a new remedy and contains no negative, express or implied, of the remedy which previously existed, the new remedy is to be regarded as cumulative and not exclusive *and a party may elect as between the two.*" (Emphasis added.) (*Decker v. Domoney* (1944), 387 Ill. 524, 528-29; see also *Kosicki v. S.A. Healy Co.* (1942), 380 Ill. 298, 302; *Chicago & Northwestern Ry. Co. v. City of Chicago* (1894), 148 Ill. 141, 160; *Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 93-94; C. Nichols, Illinois Civil Practice sec. 69 (rev. ed. 1984).) Defendant does not cite any cases where the courts have construed cumulative-remedy provisions to authorize a double recovery for a single injury, nor does our research reveal any. Moreover, we find nothing in the Act which indicates that the General Assembly intended the word "cumulative" to have a meaning different from its well-established legal meaning. Thus, we reject defendant's contention that section 3—604 authorizes a double recovery for a single injury.

In concluding that the plaintiff can recover either treble damages under the Act or common law punitive damages, but not both, we do not imply that the trial court should require an election of remedies. Since the statutory remedy under section 3—602 and the common law action for wilful and wanton misconduct are not inconsistent, the election-of-remedies doctrine is inapplicable to this case. (*Fleming v. Dillon* (1938), 370 Ill. 325, 331-32;

*Altom v. Hawes* (1978), 63 Ill. App. 3d 659, 661-62; D. Dobbs, Remedies 13-23 (1982); Kiely, *Damages, Equity and Restitution—Illinois Remedial Options* (1975), 24 DePaul L. Rev. 274, 316-19.) In *Jackson v. Industrial Board* (1917), 280 Ill. 526, this court stated:

> "The doctrine of the election of remedies is applicable only where a party has elected between inconsistent remedies for the same injury or cause of action. Familiar instances of this doctrine are where a party waives a tort and sues in assumpsit, or where he elects to sue in replevin for property unlawfully taken in preference to bringing a suit for money damages for the unlawful taking, or where a party elects to affirm a contract and sue for a breach thereof rather than to sue for a recision of the contract, etc. The doctrine does not apply to concurrent remedies that are not inconsistent with each other and has no application to an election between suits based upon different statutes. Where one has a right of action at common law and also under the statute for the same injury, the bringing of either of said suits is not a bar to the other, and particularly where no recovery has been had under the one or the other." (280 Ill. 526, 531.)

A double recovery in the present case can be avoided simply by fashioning the judgment accordingly. If a verdict is returned in plaintiff's favor on both counts I and II, the trial court can enter judgment on the two verdicts in the alternative so that plaintiff recovers only one satisfaction.

Next, defendant contends that section 3—602 violates due process because it provides for the award of treble damages for negligent conduct. Defendant's argument is based in part upon sections 2—107 and 3—602 of the Act, which, if read together, allow residents to recover treble damages for "abuse or neglect." (Ill. Rev. Stat. 1983, ch. 111½, pars. 4152—107, 4153—602). The Act defines "neglect" as "a failure in a facility to provide adequate medical or personal care or maintenance, which

failure results in physical or mental injury to a resident or in the deterioration of a resident's physical or mental condition." (Ill. Rev. Stat. 1983, ch. 111½, par. 4151—117.) The term "adequate care" has been defined as "[s]uch care as a man of ordinary prudence would himself take under similar circumstances to avoid accident ***." (Black's Law Dictionary 36 (5th ed. 1979); see also *Wallace v. Wilmington & N.R. Co.* (1889), 13 Del. (8 Houst.) 529, 18 A. 818.) As such, we construe the term "adequate care" to be synonymous with "ordinary care," "due care," or "reasonable care"—terms that have been used interchangeably to describe the standard of care for negligence. (*People v. Wawczak* (1985), 109 Ill. 2d 244, 250; *Roberts v. Chicago City Ry. Co.* (1914), 262 Ill. 228, 233.) Moreover, under section 3—601 of the Act, vicarious liability is imposed upon licensees and owners "for any intentional or *negligent act or omission* of their agents or employees which injures the resident." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 111½, par. 4153—601.) Therefore, we agree that the Act allows for the award of treble damages for negligent conduct.

Defendant observes that at common law punitive damages are awarded only when a defendant commits some type of affirmative misconduct, such as when a tort is committed with fraud, actual malice, wilful and wanton misconduct, or deliberate violence. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186.) Defendant asserts that since the treble damages awarded under section 3—602 are a form of punitive damages, the Act "is completely unprecedented and at odds with the traditional purposes and requirements for imposing *** [punitive] damages." As such, it argues that section 3—602 is "overly punitive, improper" and a violation of defendant's due process rights.

The starting point for any due process analysis is the selection of the proper test to be applied to the chal-

lenged statute. When the statute under consideration does not affect a fundamental constitutional right, the appropriate level of scrutiny is the rational-basis test. (See *Lindsey v. Normet* (1972), 405 U.S. 56, 64-65, 31 L. Ed. 2d 36, 45-46, 92 S. Ct. 862, 869-70; *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct. 461.) In contrast, the courts will subject legislation to strict scrutiny if the law impinges upon a fundamental right. However, only rights "that lie at the heart of the relationship between the individual and a republican form of nationally integrated government" are deemed to be fundamental (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 97), and the Supreme Court has selected only a few rights for such an esteemed status. In the present case, it cannot be said that section 3—602 impinges upon a fundamental right or liberty, and defendant does not argue that strict scrutiny should be applied to the statute here. Accordingly, the rational-basis test is the appropriate level of scrutiny to be applied to section 3—602.

Under the rational-basis test, a statute will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory. (*Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 419; *Kidd v. Industrial Com.* (1981), 85 Ill. 2d 534, 538; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) A statute is presumed to be valid, and the party challenging the legislation has the burden of proving that the statute is irrational. (*Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 419.) As long as there is a conceivable basis for finding a rational relationship, the law will be upheld. (*McGowan v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105.) The Supreme Court in *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct. 461, explained:

"[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." 348 U.S. 483, 487-88, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464.

In creating a private right of action against licensees of nursing homes, the General Assembly implicitly embraced the concept of the "private attorney general." (See generally *Stiffelman v. Abrams* (Mo. 1983), 655 S.W. 2d 522, 530.) That is, it recognized that the Department of Public Health could not police every violation of the Act, and that nursing home residents themselves were in the best position to know of abuses and to seek redress for violations. (Daley and Jost, *The Nursing Home Reform Act of 1979*, 68 Ill. B.J. 448, 453 (1980).) However, without the possibility of recovering treble damages and attorney fees, many residents would likely forgo suing a licensee for violations of the Act. The legislature could reasonably assume that residents, either because of their advanced age, mental or physical infirmities or lack of financial resources are often unlikely to pursue costly and time-consuming litigation in the hope of receiving an uncertain or small recovery. As plaintiff observes, the expected time it would normally take to resolve the case frequently is longer than a resident's life expectancy. A nursing home resident under such circumstances has little incentive to seek redress for violations of the Act. Moreover, many violations of the Act will yield little in the way of actual monetary damages. Violations of a resident's privacy, religious freedom, speech and other constitutional rights, while vitally important to

a resident, are unlikely to produce large damage awards. Providing for the recovery of treble damages has the presumed effect of encouraging private enforcement as well as encouraging compliance with the Act, and therefore, it has a rational relationship to the end sought and is not arbitrary or discriminatory. (*Cf. Louis Pizitz Dry Goods Co. v. Yeldell* (1927), 274 U.S. 112, 71 L. Ed. 952, 47 S. Ct. 509 (award of punitive damages against employer for employee's negligence does not violate due process).) We hold that section 3—602 does not violate the due process clauses of the State and Federal constitutions. Ill. Const. 1970, art. I, sec. 2; U.S. Const., amend. XIV, sec. 1.

Finally, defendant complains that section 3—602 is unconstitutional because it constitutes special legislation. The provision of our constitution which prohibits special legislation states: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, sec. 13.) Special legislation confers a special benefit or privilege on a person or group of persons to the exclusion of others similarly situated. (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367; *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, 4.) "It arbitrarily, and without a sound, reasonable basis, discriminates *in favor of* a select group." (Emphasis in original.) *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38.

The standards used in determining whether a law violates the special legislation provision of the Illinois Constitution are exactly the same as those used in determining whether a law violates equal protection. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116,

124; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.) Where a classification does not affect a fundamental right or discriminate against a suspect class, the proper standard is the familiar rational-basis test. *(Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312-13, 49 L. Ed. 2d 520, 524, 96 S. Ct. 2562, 2566-67; *McGowan v. Maryland* (1961), 366 U.S. 420, 6 L. Ed. 393, 81 S. Ct. 1101; *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 204.) "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 745, 89 S. Ct. 1404, 1408.

Defendant argues that section 3—602 constitutes special legislation because it gives a remedy to residents of private nursing homes which is not available to hospital patients, residents of State-operated nursing homes, or residents of similar institutions even though those persons also are dependent upon the facility operators for personal care.

We disagree with defendant that no rational basis exists for distinguishing between State-operated and private nursing homes. In previously holding that the exemption of State-operated facilities from the operation of the Act violated neither the equal protection clause nor the prohibition against special legislation, the court in *People v. Gurell* (1983), 98 Ill. 2d 194, stated:

"The State has pointed out in its brief that State-operated facilities are under the direct control of the State and that most of these facilities are regulated by statutes other than by the one in question. Thus, whereas the State has no means of controlling the operation of privately owned facilities other than through the statute in question, it does have direct control over the operation of

State-owned facilities without the aid of the statute now under consideration. The urgent need of the legislation would properly be perceived by the legislature to be in the private nursing home area and not in the area of institutions operated by the State. There exists, therefore, a rational basis for focusing the application of this Statute on privately owned and operated nursing homes and attacking the problem first in that area, where the legislature perceived the greatest need to be." (98 Ill. 2d 194, 205-06.)

The rationale stated in *Gurell* is applicable to defendant's special-legislation argument here. The legislature could rationally believe that a statutory right of action was more urgently needed for residents of private nursing homes than for residents of State-operated facilities, since it is much easier for the State to detect and correct unsatisfactory conditions in its own facilities.

We also think a rational basis exists for distinguishing between hospitals and "long-term care" facilities (nursing homes). (See Ill. Rev. Stat. 1983, ch. 111½, par. 4151—113.) Hospital patients are not dependent upon the facility operator in the same manner as a resident of a nursing home. Persons usually are hospitalized for only brief periods of time, whereas nursing home residents may be dependent upon the facility operator for a period of years. Thus, the potential for long-term abuse and neglect is far greater for nursing home residents than it is for hospital patients. Further, the Act was adopted amid specific reports of abuse, neglect and unsatisfactory treatment of residents in private nursing homes. (Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 182-84 (statements of Senators Richard M. Daley and Karl Berning).) As such, the General Assembly reasonably could have concluded that reform of the private nursing home industry was more urgently needed. A legislature is "allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most

acute to the legislative mind' [citation]; and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." (*McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409; see also *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367; *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271, 281.) We affirm the trial court's finding that section 3—602 does not violate the special legislation provision of the Illinois Constitution.

For the reasons stated, the decision of the circuit court finding that section 3—602 does not violate the special legislation clause of our constitution is affirmed. The court's decision finding that the Act is unconstitutional because it authorizes a double recovery of punitive damages is reversed. The cause is remanded to the circuit court of Champaign County for further proceedings consistent with this opinion.

*Affirmed in part and reversed in part; cause remanded.*