THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE L. McCLAIN, Defendant-Appellant.

Fourth District    No. 4—93—0417

Opinion filed January 12, 1995.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

After a jury trial, defendant Willie McClain was found guilty of aggravated battery and two counts of first-degree murder (Ill. Rev. Stat. 1991, ch. 38, pars. 12—4, 9—1). Defendant appeals and seeks a new trial, asserting the trial court erred by failing to (1) allow certain cross-examination of a prosecution witness, and (2) properly instruct the jury. We affirm.

Patrick Kelly, a police officer for the City of Champaign, was working in the early morning hours of May 11, 1992. Around 3:45 a.m. he was dispatched to investigate a call of shots fired, and came upon a car in the 400 block of Grove Street. Inside the car he found two persons, later identified as Shelvin Johnson and Eunice Pendermon, shot and severely wounded. Another officer found a third shooting victim, later identified as Michelle Meeks, farther down the street. Johnson and Pendermon died as a result of their wounds.

Jimmie Ross, Jr., was in the car with Johnson and Pendermon earlier that evening. Johnson was driving, Pendermon was in the backseat, and Ross was in the passenger seat. They stopped at the 400 block of East Grove to pick up Michelle Cooley (Meeks), when another car pulled in front of them. A man named Martinez (Gill) got out of the driver's side of the car in front of them carrying a pistol. He came to the car Ross was in and shot Johnson. Ross also saw defendant get out of the car in front of him. Defendant was carrying a pistol and began shooting. Ross got out of the car and ran, and he was hit in his thigh with a bullet. He continued to run and then hid in a garage until the police and paramedics came. Ross helped Johnson steal drugs and electronic equipment from Gill earlier that evening. Johnson and Gill were drug dealers and former associates.

Michelle Meeks lived in the 400 block of East Grove Street. She was walking in the neighborhood when a car pulled up. Johnson, the driver of the car, asked her to get in. She could see other people in the car. A car then pulled in front of Johnson's car. Gill and defendant got out of that car and came toward Johnson's car. Meeks

backed away and saw both Gill and defendant carrying guns. Gill shot into Johnson's car. Ross jumped out of the car and ran, with Gill and defendant chasing him. Meeks hid behind a tree and heard more gunshots. Both Gill and defendant found Meeks. Defendant walked by her and shook his head. He was carrying a gun. Gill then shot her in the chest and arm. She "laid down and pretended to be dead," and heard more shots fired. She could see both Gill and defendant standing by Johnson's car shooting into the car. Gill and defendant then left.

On cross-examination, defense counsel attempted to question Meeks about an "incident" involving Bonnie Gill. The prosecution objected, and a side-bar conference was held. After the side bar, the trial court sustained the objection. Defense counsel later made an offer of proof that had the trial court allowed this specific cross-examination of Meeks, she would have testified a year and a half prior to the trial, she inflicted a fatal knife wound on Bonnie Gill, Martinez Gill's sister-in-law. Defendant was being tried on the aggravated battery count involving Meeks based on an accountability theory, so defense counsel believed Meeks' testimony would show Gill had a motive for shooting Meeks independent of any plan to shoot Johnson. This would tend to show shooting Meeks was not part of any plan defendant had to shoot Johnson, and so defendant would not be accountable for Meeks being shot. The trial court again sustained the prosecution's objection to the cross-examination on grounds of relevancy.

Sara Lambert sought out defendant earlier on the evening of the shooting because she wanted to buy cocaine from him. He got in her car and directed her to drive all around town. She asked why they could not "get something." Defendant told her "well, he was looking for somebody. Somebody had broken into his friend's trailer, and he was helping him find him, had to find this guy." Defendant continued to have her drive around town. They picked up Gill and a man named Thomas Houston, and continued to drive. Lambert heard defendant talk with Gill and Houston about stolen drugs. She heard them mention both Shelvin Johnson and Jimmie Ross. Gill and defendant were doing most of the talking.

At some point, they found a car "they said was that guy's car." Defendant got out, and Lambert heard glass breaking. Defendant was gone perhaps five minutes, but Gill and Houston did not leave the car during this time. Defendant returned carrying a lead pipe, and said "the back windows was hard to break" and "he wouldn't be driving that car."

Eventually, the men found the car they were looking for and told

Lambert to follow it and then pull up beside the car. Everyone got out of Lambert's car except her, and she heard gunshots. Gill and defendant each had a gun. She heard defendant say "give me the gun, let me do it." Both Gill and defendant shot into the car behind hers. She was scared, wanted to leave, and started to move her car, but Gill returned, swore at her, and told her to "stop the car now." He was holding a gun. She heard the men say they were worried about "someone getting away."

Gill, defendant, and Houston then got back in her car, and told her to "get out of here." She drove them to defendant's girlfriend's house. Defendant handed Houston a gun and said " 'hide it and hide it good.' " Defendant and Lambert went in the house, where he said, " 'you know, you can't tell anybody about this, don't you? Do you know what I mean? Because if you do, same thing is going to happen to you. Do you understand me?' " He also told her, " 'Now you understand what I do.' " He said, "this was his job, what comes along with it sometimes." She replied, "I know." Several days later, she went to the police and told them what happened. She told them she was considering leaving town because she was frightened of all three men and the whole situation.

On the evening in question, prior to the shooting, Lambert did not see defendant, Gill, or Houston with a gun, nor did she hear any of them mention anything about killing anyone. She only knew Gill was angry because someone had stolen from him. Lambert was not charged with any crime arising out of the shooting incident, and she was being paid to relocate in exchange for her testimony.

The key witness for the defense was the defendant. On the night of the shooting, he was riding in the car with Lambert when they stopped to pick up Gill and Houston. Gill asked Lambert to drive around so Gill could find Johnson. Defendant knew Johnson had stolen from Gill, but defendant did not know what Gill was going to do when he found Johnson. Gill then saw Johnson's car and asked Lambert to pull up beside it. Lambert did, and Gill got out and began to shoot into Johnson's car. Neither defendant nor Houston left the car. Until then, defendant did not know Gill had a gun. After the incident, defendant never threatened Lambert not to say what had happened.

Defense counsel offered a jury instruction, concerning Lambert's testimony, telling the jury to consider suspicious the testimony of an accomplice. The prosecution objected, asserting there had been no evidence, nor any assertions, Lambert had been an accomplice. The trial court agreed and sustained the objection to the instruction. The jury found defendant guilty of the murders of Shelvin Johnson and

Eunice Pendermon, and guilty of the aggravated battery of Michelle Meeks. Defendant was sentenced to concurrent terms of life imprisonment for the two counts of murder, and seven years' imprisonment for the count of aggravated battery. Defendant filed a post-trial motion for new trial. The trial court denied the motion, and defendant now appeals.

■ Defendant first argues he should receive a new trial because the trial court erred in refusing to allow him to cross-examine Meeks in regard to a possible motive Gill had in shooting her. Defendant is accountable only for those acts done in furtherance of the common criminal design, if any, between him and Gill. (*People v. Terry* (1984), 99 Ill. 2d 508, 514, 460 N.E.2d 746, 749.) Defendant correctly notes, citing *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, he has the right to present relevant, competent evidence and witnesses in his behalf. Defendant asserts that by refusing to allow defendant to cross-examine Meeks, the trial court did not allow defendant the opportunity to present relevant evidence showing he is not accountable for the shooting of Meeks. Defendant alleges Meeks' testimony would have shown Gill had an independent motive for shooting her, thereby proving Gill acted alone and independently in shooting Meeks. Defendant contends shooting Meeks was not part of any criminal plan defendant might have had with Gill, and defendant is not accountable for Meeks' shooting.

A defendant is accountable for the criminal act of another if "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, [the defendant] solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992)).

> "The law on accountability incorporates the common design rule, which provides that where two or more persons engage in a common criminal design or agreement, *any* acts in the furtherance of the design by any one party are considered to be the acts of all parties to the common design, and all are accountable for those acts." (Emphasis added.) (*People v. Basden* (1994), 264 Ill. App. 3d 530, 548, 636 N.E.2d 919, 932.)

A defendant will be accountable for crimes of the principal even if the defendant's intended participation in the common design is to aid the principal in only one offense, and not to aid the principal in other crimes committed by the principal in furtherance of the planned or intended act. (*People v. Lee* (1993), 247 Ill. App. 3d 505, 509, 617 N.E.2d 431, 434.) For example, a defendant may be charged with murder based on a theory of accountability where the defendant

enters a common design to commit only a battery, yet a murder is committed during the course of the battery. (*Terry*, 99 Ill. 2d at 515, 460 N.E.2d at 749.) Defendant is accountable for *all* acts committed by Gill in the furtherance of the original underlying scheme between Gill and defendant to find Johnson or Ross and commit an offense.

Defendant argues Gill had an independent motive for shooting Meeks, and therefore shooting Meeks was not in furtherance of any common design between Gill and defendant. Motive is relevant in an accountability case to show the existence of the *underlying* common design to commit an offense. (*People v. Almendarez* (1994), 266 Ill. App. 3d 639, 647, 639 N.E.2d 619, 625 (evidence of common design "includes motive evidence unquestionably attributable to one defendant").) Once an underlying common design to commit a planned offense is established, no *additional* common designs need be established for all of the individual acts committed during the commission of the planned offense. Because no additional common designs need be established for a defendant to be accountable for these individual acts, particularized motives for these acts need not be established. Independent motives for these acts are not relevant, because a defendant would still be accountable for these individual acts no matter what the principal's motive was in committing them.

Once a common design was established between Gill and defendant to commit an offense against Johnson or Ross, the prosecution need not have established *additional* common designs for each individual act committed by Gill during the commission of the planned offense. Defendant is accountable for acts committed by Gill during the commission of the planned offense, regardless of whether Gill had a separate or independent motive in committing those acts. Here, the commission of the planned offense was still ongoing when Gill shot Meeks, because for purposes of determining legal accountability, the crime is not completed until the offender has escaped from the scene. (*People v. Johnson* (1991), 220 Ill. App. 3d 550, 555, 581 N.E.2d 118, 123.) Therefore, the trial court did not err in refusing to allow defendant to cross-examine Meeks regarding the incident between Meeks and Gill's sister-in-law. That incident, and whether it motivated Gill to shoot Meeks, was irrelevant in determining defendant's accountability for the shooting of Meeks based on an underlying scheme between Gill and defendant to commit an offense against Johnson or Ross.

■ Defendant next argues the trial court erred in refusing to give a jury instruction on accomplice testimony in regard to the testimony of Lambert. Illinois Pattern Jury Instructions, Criminal, No. 3.17 states:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (3d ed. 1992).)

The drafters of this section believed the jury should be instructed to view an accomplice's testimony with suspicion because an accomplice may seek to gain immunity or leniency by falsely accusing others and procuring their conviction, even though an accomplice may deny any promise or expectation of leniency. (*People v. Jordan* (1993), 247 Ill. App. 3d 75, 84-85, 616 N.E.2d 1265, 1273.) This instruction should be given to the jury if it is determined a witness is an accomplice.

Defendant cites *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31, as controlling on the issue of whether Lambert should be considered an accomplice. We need not decide whether Lambert was an accomplice. The failure to give an accomplice testimony instruction when appropriate is not necessarily reversible error. In determining whether the failure to instruct the jury on accomplice testimony is error, a reviewing court may consider whether the witness' testimony was critical to the prosecution, whether witness bias was brought out on cross-examination, and whether the court gave a general jury instruction as to the credibility of witnesses. (See *People v. Howard* (1991), 209 Ill. App. 3d 159, 185, 568 N.E.2d 56, 72.) A court may also consider whether defense counsel noted the potential bias of the witness during counsel's closing arguments. *People v. Hoard* (1993), 249 Ill. App. 3d 21, 32, 618 N.E.2d 808, 817.

Lambert's testimony was damaging to defendant, but was not critical to the prosecution. Both the other key prosecution witnesses, Ross and Meeks, testified they saw defendant shooting into the car containing the two murder victims. Potential bias was brought out during cross-examination of Lambert concerning the lack of charges against her and her being paid to relocate in exchange for her testimony. Defense counsel also commented at length during closing arguments about possible motivations Lambert had to give her testimony. Further, the trial court gave the jury a general instruction concerning witness credibility. Given these factors, even assuming Lambert was an accomplice, the failure of the trial court to instruct the jury on accomplice testimony was not reversible error.

The judgment of the trial court is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.