NO. 4-96-0277

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Champaign County

WILLIE L. McCLAIN, ) No. 92CF1142

Defendant-Appellant. )

) Honorable

) Harold L. Jensen,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In March 1996, defendant, Willie L. McClain, was serving a sentence of natural life in prison upon his conviction of two counts of first degree murder when he filed 
pro
 
se
 a post-conviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 
et
 
seq
. (West 1994)).  Because defen­dant filed his petition late under section 122-1 of the Act (725 ILCS 5/122-1 (West Supp. 1995)), he also filed a motion to file a late petition for postconviction relief.  In that motion, defendant alleged that his delay in timely filing his postconviction petition should be excused because it was not due to his culpable negli­gence, but was due instead to a "lockdown" at the Pontiac Correc­tional Center (Pontiac), where he was incarcerated.  

The trial court denied defendant's motion to file his late postconviction petition.  Defendant appeals, and we affirm.   I. BACKGROUND

In February 1993, a jury convicted defendant of two counts of first degree murder stemming from the deaths of two vic­tims, and in March 1993, the trial court sentenced him to natural life imprisonment on each convic­tion.  He ap­pealed, and this court affirmed his convictions and sen­tence.  
People v. McClain
, 269 Ill. App. 3d 500, 645 N.E.2d 585 (1995).  He filed a petition for leave to appeal to the Supreme Court of Illinois, which was denied on April 5, 1995.  
People v. McClain
, 161 Ill. 2d 535, 649 N.E.2d 422 (1995).   

On March 18, 1996, defendant filed his postconviction peti­tion and accompanying documents (which included his motion to file a late petition for postconviction relief 
instan­ter
, an affida­vit in support of that motion, an affidavit in support of his postconviction petition, a document entitled "memorandum of law/finding of facts," a motion for ap­pointment of counsel, and a motion to proceed as a poor person).  

In defendant's motion to file a late petition for post-conviction relief, he asserted that Pontiac, where he was incar­cerated, was on "lockdown" for reasons unknown to defendant during the following times:  16 days of January 1995; five days in Febru­ary 1995; 17 days of March 1995; three days of April 1995; 12 days of May 1995; 13 days of June 1995; 24 days of July 1995; no days of August 1995; 12 days of September 1995; all of October 1995; 12 days of November 1995; 21 days of December 1995; 20 days of January 1996; all of February 1996; and March 1 through 14 of 1996.  Defendant further alleged that during such "lockdowns," the prison severely restricted the move­ment of inmates, including prohib­iting them from using the prison's law library.  Defendant also asserted that contin­u­ous "lockdowns" adversely affected his ability to investi­gate aspects of his postconviction petition and to prepare it.  As a result, he sought assistance from a prominent Chicago law firm which--defen­dant alleges--"held on to petitioner's tran­scripts given [
sic
] the petitioner the false belief that they was [
sic
] going to assist him only to tell him six-months [
sic
] later that they would­n't help him."  

After defendant learned the law firm was not going to assist him, he "final­ly got assis­tance from [a] jail house lawyer."  He con­cluded the motion by asserting that he had put forth his best good-faith effort to file a timely peti­tion and the delay was not due to his own culpable negli­gence.   

Defendant attached to that motion a letter dated Septem­ber 26, 1995, from the 
pro
 
bono
 coordinator of the Chicago law firm, which informed defendant that the law firm would be unable to handle his case due to the large number of similar requests it receives.  Al­though the letter indicated that the law firm was returning defendant's "documents" to him (with­out speci­fy­ing what those documents were), the letter did not indi­cate how long the law firm had posses­sed those docu­ments.

     II. ANALYSIS

Resolution of defendant's argument that the trial court erred by dismissing his postconviction petition on the ground that it was not timely filed requires a careful analysis of section 122-1 of the Act, which reads, in pertinent part, as follows:

"No proceedings under this Article shall be com­menced more than 6 months after the denial of a peti­tion for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the de­fendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the dead­line for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of convic­tion, whichever is sooner, unless the peti­tioner alleges facts showing that the delay was not due to his culpa­ble negligence."  725 ILCS 5/122-1 (West Supp. 1995).  

The supreme court denied defendant's petition for leave to appeal on April 5, 1995.  Therefore, he had six months from that date--or until October 5, 1995--in which to file his post-conviction petition.  (Note that this October 1995 deadline is "soon­er" than February 1996, which would be three years from the date of defendant's conviction.)  However, defendant filed his postconviction peti­tion (and its accom­pa­ny­ing docu­ments) on March 18, 1996, approxi­mately 5½ months late.  Defen­dant has at­tempted to excuse this 5½-month delay by showing that it was not due to his "culpa­ble negli­gence," as that term is used in section 122-1 of the Act (725 ILCS 5/122-1 (West Supp. 1995)).  We are unper­suaded.

Section 122-1 of the Act sets forth the time period in which a defendant must file a postconviction petition and then places the burden upon a defendant who files after that time period has expired to allege facts showing that the delay was not due to his culpable negligence.  725 ILCS 5/122-1 (West Supp. 1995).  That language demonstrates that the late-filing defen­dant has the burden of proof at any evidentiary hearing conducted on the issue of whether the delay was not due to his culpable negligence.  However, section 122-1 of the Act does not address how strong a showing a defendant must make when alleging facts showing that the delay was not due to his culpable negligence in order to warrant eviden­tiary hear­ing.  Because the lan­guage at issue in section 122-1 of the Act consti­tutes part of a compre­hen­sive statu­to­ry scheme address­ing postconvic­tion attacks on convic­tions, we con­clude that a defendant's burden to allege facts showing that the delay was not due to his culpable negli­gence should be the same burden the Act other­wise imposes on a defen­dant who seeks an evidentiary hearing on his postconvic­tion claims.  As the Supreme Court of Illinois recently explained, that burden is the following:  

"A defendant [who has filed a postcon­viction peti­tion] is not entitled to an evi­dentiary hearing as a matter of right.  [Ci­ta­tions.]  Instead, an evidentiary hear­ing should be conducted where a substantial show­ing of a violation of constitu­tional rights has been made, supported by the record or affida­vits."  
People v. Thomas
, 164 Ill. 2d 410, 416, 647 N.E.2d 983, 987 (1995).  

Thus, we hold that before a trial court need conduct an eviden­tiary hearing regarding defendant's claim that his delay in timely filing a postconviction petition was not due to his culpable negligence, he must make a "substantial showing" by alleging facts demonstrating that to be the case.  Defen­dant here has failed to make such a showing.  

As previously pointed out, defendant filed his post-conviction petition 5½ months later than section 122-1 of the Act (725 ILCS 5/122-1 (West Supp. 1995)) requires.  Assuming the accura­cy of his claim that Pontiac was on "lockdown" during a substan­tial portion of that 5½-month period, resulting in prohib­itions on inmates using the prison's law library, it does not follow that these circum­stances justi­fied defendant's tardy filing.  Implicit in defendant's argument is the assumption that in order to prepare his postconvic­tion peti­tion, he needed to do research in the prison law library.  Howev­er, that assump­tion is false.

As the supreme court recently explained in 
People v. Gaultney
, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996): 

"[A] post-conviction proceeding [under the Act] that does not involve the death penalty has three distinct stages.  In the first stage, the defendant files a petition and the cir­cuit court determines whether it is frivo­lous or patently without merit.  At this stage, the Act does not permit any fur­ther pleadings from the defendant or any motions or respon­sive pleadings from the State.  Instead, the circuit court considers the petition indepen­dently, without any input from either side.  
To
 
survive
 
dismissal
 
at
 
this
 
stage
, 
a
 
peti­tion
 
need
 
only
 
present
 
the
 
gist
 
of
 
a
 
consti­tutional
 
claim
.  [Citation.]  This is a low threshold and a defendant need only present a limited amount of detail in the petition.  
At
 
this
 
stage
, 
a
 
defendant
 
need
 
not
 
make
 
legal
 
arguments
 
or
 
cite
 
to
 
legal
 
authority
.  [Cita­tion.]  The Act pro­vides that the peti­tion must be supported by 'affidavits, re­cords, or other evidence sup­porting its allegations' or the petition 'shall state why the same are not attached.'  725 ILCS 5/122-2 (West 1992).  If the circuit court does not dismiss the petition pursuant to section 122-2.1, it is then docketed for further consid­eration."  (Emphasis added.)   

In 
People v. Lemons
, 242 Ill. App. 3d 941, 946, 613 N.E.2d 1234, 1237 (1993), this court pointed out that all a post-convic­tion peti­tioner need do at the first stage is set forth the "gist of a merito­ri­ous claim," which we explained as follows:

"Although a 
pro
 
se
 defendant seeking post-conviction relief would not be expected to construct legal arguments, cite legal author­ity, or draft her petition as artfully as would counsel, the 
pro
 
se
 defendant must still plead sufficient 
facts
 from which the trial court could find a valid claim of de­privation of a constitutional right."  (Em­phasis in original.)

We also added the following:  

"[T]he 
pro
 
se
 petitioner need not con­struct legal arguments in her petition nor even understand what legal arguments the facts she presents therein might support.  Instead, the trial court should consider the petition at the first stage to determine whether it con­tains sufficient facts upon which a meri­tori­ous constitutional claim 
could
 
be
 based."  (Emphasis in original.)  
Lemons
, 242 Ill. App. 3d at 947, 613 N.E.2d at 1238. 

Thus, 
Gaultney
 and 
Lemons
 make clear that the 
pro
 
se
 petitioner, who (like this petitioner) is requesting the appointment of counsel to help with the petition, need not spend any time in the prison law library to set forth the "gist of a merito­ri­ous claim."  The petition­er-inmate need only plead suffi­cient 
facts
 from which the trial court could find a valid claim of depriva­tion of a constitutional right.  According­ly, we conclude that a prison "lockdown," restricting an inmate's access to the prison law library, does not constitute a legiti­mate excuse for the inmate's not filing a postconvic­tion peti­tion in a timely fash­ion.  

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurrs.

GREEN, J., dissents.

JUSTICE GREEN, dissenting:

I agree with the majority that "section 122-1 of the Act constitutes part of a comprehensive statutory scheme address­ing postconviction attacks on convictions."  Slip op. at 5.  As far as the merits of such petitions are concerned, the clear scheme is that a party appearing 
pro
 
se
 need only get over a threshold of presenting a petition that is not "frivolous or patently without merit" and presents the "gist" of a claim for relief.  If that is done, the petitioner is entitled to counsel who can prepare a more sophis­ticated postconviction petition before a determina­tion is made as to whether the petitioner is entitled to an evidentia­ry hearing.

Thomas
 was a capital case where the death penalty had been imposed, the defendant had counsel, and the rule referred to by the majority in this case concerned the caliber of draft re­quired under those circumstances.  Slip op. at 1.  Here, defendant's motion was prepared and presented 
pro
 
se
.  Following the scheme of postcon­viction attacks on convictions, the 
pro
 
se
 defendant should be held to a lesser standard only in presenting his motion for late filing.  The standard of 
Gaultney
 and 
Lemons
 would seem to be more nearly appropriate than that of 
Thomas
.  In any event, we should not hold a 
pro
 
se
 petitioner moving to file a late post­conviction petition to the language of a lawyer or even to that of an educated person.  

No word in a statute should be deemed meaningless.  
Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund
, 155 Ill. 2d 103, 111, 610 N.E.2d 1250, 1253 (1993); 
Harris v. Manor Healthcare Corp.
, 111 Ill. 2d 350, 362-63, 489 N.E.2d 1374, 1379 (1986).  In using the word "culpa­ble" as an antecedent to the word "negli­gence" in section 122-1 of the Act, the General Assembly must have intended to refer to a type of negli­gence that is quite severe.  Three circumstanc­es patent on the face of the record or set forth in defendant's motion for late filing strong­ly negate any negligence on the part of defen­dant as being "culpable."

The first circumstance concerned a substantial shorten­ing by the legislature of the time in which defendant had to bring his postconviction petition.  This occurred on July 1, 1995, while defendant was incarcerated.  At the time the supreme court denied defendant's petition for leave to appeal on April 5, 1995, section 122-1 of the Act provided that, in counting the period for filing a postconviction petition, the method that set a "later" date controlled.  725 ILCS 5/122-1 (West 1992).  Under that scheme, defendant had until April 26, 1996, to file his petition.  He beat that deadline by filing on March 13, 1996.

However, section 122-1 of the Act was subsequently amended to change the word "later" to the word "sooner" (725 ILCS 5/122-1 (West 1992) (amended by Pub. Act 88-678, §15, eff. July 1, 1995 (1994 Ill. Laws 2712, 2732)), thus drastically changing the time frame in which defendant had to file because the six-month period of section 122-1 expired on October 5, 1995.

I do not know when we can charge defendant with knowledge of the shortened time period he had to file, but we cer­tain­ly cannot charge him with notice before that enactment took effect on July 1, 1995.  As stated by the majority, defen­dant indicated in his motion, in unlawyerlike language, that six months before late September 1995 he sent trial transcripts to a Chicago attorney seeking her help, but she sent the documents back to him in late September 1995 telling him her firm had too much 
pro
 
bono
 work to do to help him.  As the period of six months before late September 1995 would have been late March 1995, at that time defendant had almost another year before filing was required.  We cannot properly charge defendant with culpable negligence in doing nothing before late March 1995 to meet the deadline then almost a year away.

Defendant also stated in his motion for late filing that he assumed the Chicago attorney was going to help him because she did not write back to say she could not.  This may be unrealistic thinking, but we should not deem such an assumption to be culpable negligence.  Notably, when that lawyer did write back in late September 1995, she in no way warned defendant that his deadline for filing was soon approaching.  I conclude defen­dant's motion fully indicated that any negligence on defendant's part in not preparing and presenting a postconviction petition before late September 1995 was not "culpable."

According to defendant's motion, after the letter from the Chicago attorney was written on September 23, 1995, the prison was free from "lockdown" for only 49 days before he filed his motion and petition on March 13, 1996, and none of those free days occurred in February or March 1996.  

Although the standard required of a 
pro
 
se
 defendant seeking to advance his petition beyond the first stage is not very high, we have no assurance defendant knew that was so.  Nothing in the letter from the Chicago attorney told defendant that drafting a 
pro
 
se
 petition was something he could do.  Moreover, such drafting is more difficult than writing a letter.  In 
Lemons
, this court stated:

"The Act requires that the allegations in the petition for post-conviction relief be supported by affidavit, the record, or other evidence.  (Ill. Rev. Stat. 1991, ch. 38, pars. 122-1, 122-2.)  However, the 
sole
 
ex­tent
 of defendant's allegations regarding her coercion claim is that her trial counsel 'coerced defen­dant into accepting a 

fifteen[-]year sen­tence where the possibility exist­ed that she could of [
sic
] received a lesser sentence if taken to trial.'"  
Lemons
, 
242 Ill. App. 3d at 945, 603 N.E.2d at 1237.

Reasonable access but not unrestricted access of a pri-soner to a law library has been held to be a constitutional right if the prisoner has no right to or opportunity for an attorney.  
Bounds v. Smith
, 430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498 (1977); 
People v. Banks
, 161 Ill. 2d 119, 139-40, 641 N.E.2d 331, 341 (1994).  One of the reasons for that rule must be that a close relationship exists between the availability of a library and the ability of a prisoner to draft 
pro
 
se
 documents for initiating requests for postconviction relief.

Moreover, many prisoners are unable to draft even simple docu­ments seeking relief without the aid of more sophisti­cated prisoners referred to as "jailhouse lawyers."  Defendant's docu­ments here were apparently drafted by such a person or by defendant at his direction.  The prison library offers a place where the prisoner and his "jailhouse" lawyer can meet and work in a way not available during a "lockdown."

Accordingly, I conclude that with the evidence of the "lockdowns," defendant made a sufficient showing that his failure to prepare a postconviction petition between late September 1995 and up to just before his filing on March 13, 1996, was not due to culpable negligence on his part.  As I deem the defendant here made sufficient allegations to negate culpable negligence on his part, I dissent from the decision to affirm the circuit court's summary denial of defendant's motion for late filing.

In a case that came before this court on appeal from denial of a motion to file a late postconviction petition, the circuit court had also tentatively ruled on the question of whether the postconviction petition was "frivolous or patently without merit."  Under those circumstances, if we should hold that the filing should be permitted, we could then pass on the question of whether the petition should be permitted to pass to the second stage of the statutory scheme.  Under the holding of the majority, such a procedure would make no difference here, but had our decision been to reverse, multiple appeals might have been avoided.  The circuit court's ruling on both the motion for late filing and the merits of the postconviction petition should be encouraged.