THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE
L. McCLAIN, Defendant-Appellant.

Fourth District    No. 4—96—0277

Opinion filed September 11, 1997.—Rehearing denied October 9, 1997.

GREEN, J., dissenting.

Daniel D. Yuhas and John Anthony Palombi, both of State Appellate
Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert

J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In March 1996, defendant, Willie L. McClain, was serving a sentence of natural life in prison upon his conviction of two counts of first degree murder when he filed *pro se* a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 1994)). Because defendant filed his petition late under section 122—1 of the Act (725 ILCS 5/122—1 (West Supp. 1995)), he also filed a motion to file a late petition for postconviction relief. In that motion, defendant alleged that his delay in timely filing his postconviction petition should be excused because it was not due to his culpable negligence, but was due instead to a "lockdown" at the Pontiac Correctional Center (Pontiac), where he was incarcerated.

The trial court denied defendant's motion to file his late postconviction petition. Defendant appeals, and we affirm.

## I. BACKGROUND

In February 1993, a jury convicted defendant of two counts of first degree murder stemming from the deaths of two victims, and in March 1993, the trial court sentenced him to natural life imprisonment on each conviction. He appealed, and this court affirmed his convictions and sentence. *People v. McClain*, 269 Ill. App. 3d 500, 645 N.E.2d 585 (1995). He filed a petition for leave to appeal to the Supreme Court of Illinois, which was denied on April 5, 1995. *People v. McClain*, 161 Ill. 2d 535, 649 N.E.2d 422 (1995).

On March 18, 1996, defendant filed his postconviction petition and accompanying documents (which included his motion to file a late petition for postconviction relief *instanter*, an affidavit in support of that motion, an affidavit in support of his postconviction petition, a document entitled "memorandum of law/finding of facts," a motion for appointment of counsel, and a motion to proceed as a poor person).

In defendant's motion to file a late petition for postconviction relief, he asserted that Pontiac, where he was incarcerated, was on "lockdown" for reasons unknown to defendant during the following times: 16 days of January 1995; five days in February 1995; 17 days of March 1995; three days of April 1995; 12 days of May 1995; 13 days of June 1995; 24 days of July 1995; no days of August 1995; 12 days of September 1995; all of October 1995; 12 days of November 1995; 21 days of December 1995; 20 days of January 1996; all of February 1996; and March 1 through 14 of 1996. Defendant further al-

leged that, during such "lockdowns," the prison severely restricted the movement of inmates, including prohibiting them from using the prison's law library. Defendant also asserted that continuous "lockdowns" adversely affected his ability to investigate aspects of his postconviction petition and to prepare it. As a result, he sought assistance from a prominent Chicago law firm which—defendant alleges— "held on to petitioner's transcripts given [sic] the petitioner the false belief that they was [sic] going to assist him only to tell him six-months [sic] later that they wouldn't help him."

After defendant learned the law firm was not going to assist him, he "finally got assistance from [a] jail house lawyer." He concluded the motion by asserting that he had put forth his best good-faith effort to file a timely petition and the delay was not due to his own culpable negligence.

Defendant attached to that motion a letter dated September 26, 1995, from the *pro bono* coordinator of the Chicago law firm, which informed defendant that the law firm would be unable to handle his case due to the large number of similar requests it receives. Although the letter indicated that the law firm was returning defendant's "documents" to him (without specifying what those documents were), the letter did not indicate how long the law firm had possessed those documents.

## II. ANALYSIS

■ Resolution of defendant's argument that the trial court erred by dismissing his postconviction petition on the ground that it was not timely filed requires a careful analysis of section 122—1 of the Act, which reads, in pertinent part, as follows:

"No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." 725 ILCS 5/122—1 (West Supp. 1995).

The supreme court denied defendant's petition for leave to appeal on April 5, 1995. Therefore, he had six months from that date—or until October 5, 1995—in which to file his postconviction petition. (Note that this October 1995 deadline is "sooner" than February 1996, which would be three years from the date of defendant's conviction.) However, defendant filed his postconviction petition (and

its accompanying documents) on March 18, 1996, approximately 5$^1$/$_2$ months late. Defendant has attempted to excuse this 5$^1$/$_2$-month delay by showing that it was not due to his "culpable negligence," as that term is used in section 122—1 of the Act (725 ILCS 5/122—1 (West Supp. 1995)). We are unpersuaded.

■ Section 122—1 of the Act sets forth the time period in which a defendant must file a postconviction petition and then places the burden upon a defendant who files after that time period has expired to allege facts showing that the delay was not due to his culpable negligence. 725 ILCS 5/122—1 (West Supp. 1995). That language demonstrates that the late-filing defendant has the burden of proof at any evidentiary hearing conducted on the issue of whether the delay was not due to his culpable negligence. However, section 122—1 of the Act does not address how strong a showing a defendant must make when alleging facts showing that the delay was not due to his culpable negligence in order to warrant evidentiary hearing. Because the language at issue in section 122—1 of the Act constitutes part of a comprehensive statutory scheme addressing postconviction attacks on convictions, we conclude that a defendant's burden to allege facts showing that the delay was not due to his culpable negligence should be the same burden the Act otherwise imposes on a defendant who seeks an evidentiary hearing on his postconviction claims. As the Supreme Court of Illinois recently explained, that burden is the following:

"A defendant [who has filed a postconviction petition] is not entitled to an evidentiary hearing as a matter of right. [Citations.] Instead, an evidentiary hearing should be conducted where a substantial showing of a violation of constitutional rights has been made, supported by the record or affidavits." *People v. Thomas*, 164 Ill. 2d 410, 416, 647 N.E.2d 983, 987 (1995).

Thus, we hold that before a trial court need conduct an evidentiary hearing regarding defendant's claim that his delay in timely filing a postconviction petition was not due to his culpable negligence, he must make a "substantial showing" by alleging facts demonstrating that to be the case. Defendant here has failed to make such a showing.

■ As previously pointed out, defendant filed his postconviction petition 5$^1$/$_2$ months later than section 122—1 of the Act (725 ILCS 5/122—1 (West Supp. 1995)) requires. Assuming the accuracy of his claim that Pontiac was on "lockdown" during a substantial portion of that 5$^1$/$_2$-month period, resulting in prohibitions on inmates using the prison's law library, it does not follow that these circumstances justified defendant's tardy filing. Implicit in defendant's argument is

the assumption that in order to prepare his postconviction petition, he needed to do research in the prison law library. However, that assumption is false.

As the supreme court recently explained in *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996):

"[A] postconviction proceeding [under the Act] that does not involve the death penalty has three distinct stages. In the first stage, the defendant files a petition and the circuit court determines whether it is frivolous or patently without merit. At this stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State. Instead, the circuit court considers the petition independently, without any input from either side. *To survive dismissal at this stage, a petition need only present the gist of a constitutional claim.* [Citation.] This is a low threshold and a defendant need only present a limited amount of detail in the petition. *At this stage, a defendant need not make legal arguments or cite to legal authority.* [Citation.] The Act provides that the petition must be supported by 'affidavits, records, or other evidence supporting its allegations' or the petition 'shall state why the same are not attached.' 725 ILCS 5/122—2 (West 1992). If the circuit court does not dismiss the petition pursuant to section 122—2.1, it is then docketed for further consideration." (Emphasis added.)

In *People v. Lemons*, 242 Ill. App. 3d 941, 946, 613 N.E.2d 1234, 1237 (1993), this court pointed out that all a postconviction petitioner need do at the first stage is set forth the "gist of a meritorious claim," which we explained as follows:

"Although a *pro se* defendant seeking postconviction relief would not be expected to construct legal arguments, cite legal authority, or draft her petition as artfully as would counsel, the *pro se* defendant must still plead sufficient *facts* from which the trial court could find a valid claim of deprivation of a constitutional right." (Emphasis in original.)

We also added the following:

"[T]he *pro se* petitioner need not construct legal arguments in her petition nor even understand what legal arguments the facts she presents therein might support. Instead, the trial court should consider the petition at the first stage to determine whether it contains sufficient facts upon which a *meritorious constitutional claim could be* based." (Emphasis in original.) *Lemons*, 242 Ill. App. 3d at 947, 613 N.E.2d at 1238.

Thus, *Gaultney* and *Lemons* make clear that the *pro se* petitioner, who (like this petitioner) is requesting the appointment of counsel to help with the petition, need not spend any time in the prison law

library to set forth the "gist of a meritorious claim." The petitioner-inmate need only plead sufficient *facts* from which the trial court could find a valid claim of deprivation of a constitutional right. Accordingly, we conclude that a prison "lockdown," restricting an inmate's access to the prison law library, does not constitute a legitimate excuse for the inmate's not filing a postconviction petition in a timely fashion.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE GREEN, dissenting:

I agree with the majority that "section 122—1 of the Act constitutes part of a comprehensive statutory scheme addressing postconviction attacks on convictions." 292 Ill. App. 3d at 188. As far as the merits of such petitions are concerned, the clear scheme is that a party appearing *pro se* need only get over a threshold of presenting a petition that is not "frivolous or patently without merit" and presents the "gist" of a claim for relief. If that is done, the petitioner is entitled to counsel who can prepare a more sophisticated postconviction petition before a determination is made as to whether the petitioner is entitled to an evidentiary hearing.

*Thomas* was a capital case where the death penalty had been imposed, the defendant had counsel, and the rule referred to by the majority in this case concerned the caliber of draft required under those circumstances. 292 Ill. App. 3d at 188, quoting *Thomas*, 164 Ill. 2d at 416, 697 N.E.2d at 987. Here, defendant's motion was prepared and presented *pro se*. Following the scheme of postconviction attacks on convictions, the *pro se* defendant should be held to a lesser standard only in presenting his motion for late filing. The standard of *Gaultney* and *Lemons* would seem to be more nearly appropriate than that of *Thomas*. In any event, we should not hold a *pro se* petitioner moving to file a late postconviction petition to the language of a lawyer or even to that of an educated person.

No word in a statute should be deemed meaningless. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111, 610 N.E.2d 1250, 1253 (1993); *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 362-63, 489 N.E.2d 1374, 1379 (1986). In using the word "culpable" as an antecedent to the word "negligence" in section 122—1 of the Act, the General Assembly must have intended

to refer to a type of negligence that is quite severe. Three circumstances patent on the face of the record or set forth in defendant's motion for late filing strongly negate any negligence on the part of defendant as being "culpable."

The first circumstance concerned a substantial shortening by the legislature of the time in which defendant had to bring his postconviction petition. This occurred on July 1, 1995, while defendant was incarcerated. At the time the supreme court denied defendant's petition for leave to appeal on April 5, 1995, section 122—1 of the Act provided that, in counting the period for filing a postconviction petition, the method that set a "later" date controlled. 725 ILCS 5/122—1 (West 1992). Under that scheme, defendant had until April 26, 1996, to file his petition. He beat that deadline by filing on March 13, 1996.

However, section 122—1 of the Act was subsequently amended to change the word "later" to the word "sooner" (725 ILCS 5/122—1 (West 1992) (amended by Pub. Act 88—678, § 15, eff. July 1, 1995 (1994 Ill. Laws 2712, 2732)), thus drastically changing the time frame in which defendant had to file because the six-month period of section 122—1 expired on October 5, 1995.

I do not know when we can charge defendant with knowledge of the shortened time period he had to file, but we certainly cannot charge him with notice before that enactment took effect on July 1, 1995. As stated by the majority, defendant indicated in his motion, in unlawyerlike language, that six months before late September 1995 he sent trial transcripts to a Chicago attorney seeking her help, but she sent the documents back to him in late September 1995 telling him her firm had too much *pro bono* work to do to help him. As the period of six months before late September 1995 would have been late March 1995, at that time defendant had almost another year before filing was required. We cannot properly charge defendant with culpable negligence in doing nothing before late March 1995 to meet the deadline then almost a year away.

Defendant also stated in his motion for late filing that he assumed the Chicago attorney was going to help him because she did not write back to say she could not. This may be unrealistic thinking, but we should not deem such an assumption to be culpable negligence. Notably, when that lawyer did write back in late September 1995, she in no way warned defendant that his deadline for filing was soon approaching. I conclude defendant's motion fully indicated that any negligence on defendant's part in not preparing and presenting a postconviction petition before late September 1995 was not "culpable."

According to defendant's motion, after the letter from the Chicago

attorney was written on September 23, 1995, the prison was free from "lockdown" for only 49 days before he filed his motion and petition on March 13, 1996, and none of those free days occurred in February or March 1996.

Although the standard required of a *pro se* defendant seeking to advance his petition beyond the first stage is not very high, we have no assurance defendant knew that was so. Nothing in the letter from the Chicago attorney told defendant that drafting a *pro se* petition was something he could do. Moreover, such drafting is more difficult than writing a letter. In *Lemons*, this court stated:

"The Act requires that the allegations in the petition for post-conviction relief be supported by affidavit, the record, or other evidence. (Ill. Rev. Stat. 1991, ch. 38, pars. 122—1, 122—2.) However, the *sole extent* of defendant's allegations regarding her coercion claim is that her trial counsel 'coerced defendant into accepting a fifteen[-]year sentence where the possibility existed that she could of [*sic*] received a lesser sentence if taken to trial.' " *Lemons*, 242 Ill. App. 3d at 945, 603 N.E.2d at 1237.

Reasonable access but not unrestricted access of a prisoner to a law library has been held to be a constitutional right if the prisoner has no right to or opportunity for an attorney. *Bounds v. Smith*, 430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498 (1977); *People v. Banks*, 161 Ill. 2d 119, 139-40, 641 N.E.2d 331, 341 (1994). One of the reasons for that rule must be that a close relationship exists between the availability of a library and the ability of a prisoner to draft *pro se* documents for initiating requests for postconviction relief.

Moreover, many prisoners are unable to draft even simple documents seeking relief without the aid of more sophisticated prisoners referred to as "jailhouse lawyers." Defendant's documents here were apparently drafted by such a person or by defendant at his direction. The prison library offers a place where the prisoner and his "jailhouse" lawyer can meet and work in a way not available during a "lockdown."

Accordingly, I conclude that, with the evidence of the "lockdowns," defendant made a sufficient showing that his failure to prepare a postconviction petition between late September 1995 and up to just before his filing on March 13, 1996, was not due to culpable negligence on his part. As I deem the defendant here made sufficient allegations to negate culpable negligence on his part, I dissent from the decision to affirm the circuit court's summary denial of defendant's motion for late filing.

In a case that came before this court on appeal from denial of a motion to file a late postconviction petition, the circuit court had also

tentatively ruled on the question of whether the postconviction petition was "frivolous or patently without merit." Under those circumstances, if we should hold that the filing should be permitted, we could then pass on the question of whether the petition should be permitted to pass to the second stage of the statutory scheme. Under the holding of the majority, such a procedure would make no difference here, but had our decision been to reverse, multiple appeals might have been avoided. The circuit court's ruling on both the motion for late filing and the merits of the postconviction petition should be encouraged.