THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHERMAN SCULLARK, Defendant-Appellant.

First District (2nd Division)   No. 1—99—1722

Opinion filed October 30, 2001.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

## NATURE OF THE CASE

This appeal is from a summary dismissal of defendant (hereinafter petitioner) Sherman Scullark's *pro se* postconviction petition pursuant to section 122—2.1(a)(2) of the Post-Conviction Hearing Act (725 ILCS 5/122—2.1(a)(2) (West 1998)) on the grounds that it was time-barred and therefore did not require that the merits be addressed.

Substantively the petition alleges, *inter alia*, that at the trial the State knowingly elicited perjured testimony from a material witness and that several of petitioner's codefendants who pled guilty have now stated that petitioner was not involved in the crime. On appeal, petitioner argues that his failure to file the petition in a timely manner was not due to his culpable negligence and that his failure to include allegations that he was not culpably negligent in his petition should not result in its dismissal. Additionally, in supplemental briefs

petitioner contends that he is entitled to a new sentencing hearing based on the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

## BACKGROUND

In the underlying trial it was adduced that petitioner was a high-ranking functionary of a street gang known as the "Conservative Vice Lords." He actively participated in the punishment, which in the vernacular of the street, is referred to as a "violation," of a fellow gang member. The "violation" involved the restraining, beating, transporting and ultimately killing of the victim. On June 7, 1995, plaintiff was convicted of murder and aggravated kidnaping for which he was sentenced to natural life imprisonment on August 29, 1995. The full factors of the underlying trial are summarized in the nonpublished order pursuant to Supreme Court Rule 23 entered by this court on May 21, 1997, affirming the conviction and need not be restated here. See *People v. Mathews*, Nos. 1—95—3207, 1—95—4010 cons. (1997) (unpublished order under Supreme Court Rule 23), *appeal denied*, 178 Ill. 2d 589, 699 N.E.2d 1035 (1998).

On January 16, 1999, petitioner filed a motion to extend the time for filing his postconviction petition. In that motion he averred that between May 26, 1998, and November 25, 1998, he was placed in segregation and was deprived of his legal materials, including his then-in-progress postconviction petition. The motion also averred that petitioner then had no access to the prison library because of a prison lockdown. On February 10, 1999, the trial court denied petitioner's motion to extend the petition's filing date. On February 11 petitioner was given access to his legal materials and he proceeded to file his postconviction petition on February 18. The petition did not on its face contain any facts sufficient to explain its late filing. On March 15, 1999, the trial court summarily dismissed the petition on the grounds that it was time-barred.

Petitioner never attempted to amend his postconviction petition. However, on April 23, 1999, petitioner filed a motion to reconsider in which he alleged that prison officials had misplaced his legal papers and materials when they confiscated them and were unable to locate them until January 27, 1999, and that petitioner first received access to those materials on February 11, 1999. The motion to reconsider also alleged that on November 30, 1998, petitioner filed a grievance in an attempt to locate his legal papers which were misplaced. On May 5, 1999, petitioner's motion to reconsider was denied. This appeal followed.

## ANALYSIS

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.*

(West 1998)) provides for a three-step process in which petitions for postconviction relief are adjudicated. "The first step requires the trial court consider the petition to determine whether it is frivolous or patently without merit. If it is, the petition is dismissed." *People v. Hernandez*, 283 Ill. App. 3d 312, 316, 669 N.E.2d 1326, 1329 (1996); 725 ILCS 5/122—2.1(a)(2) (West 1998). At this first stage of the process, the court evaluates the petition without further input from the petitioner or any participation by the State. *People v. Oury*, 259 Ill. App. 3d 663, 667-68, 631 N.E.2d 822, 825 (1994). To survive stage one, the petition must only provide the gist of a constitutional claim. *People v. DeSavieu*, 256 Ill. App. 3d 731, 733, 628 N.E.2d 1117, 1119 (1993). The court may also dismiss the petition as untimely at the first stage. *People v. Wright*, 189 Ill. 2d 1, 11, 723 N.E.2d 230, 237 (1999). The dismissal of a petition pursuant to section 122—2.1(a)(2) is reviewed *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388, 701 N.E.2d 1063, 1075 (1998).

> "If the court determines at [the] first stage that the petition is not frivolous or patently without merit, then at the second stage the court may appoint counsel to represent an indigent defendant, and counsel will have the opportunity to amend the post-conviction petition. The State may then move to dismiss the petition. The third and final stage is an evidentiary hearing if the court has not dismissed the petition on the State's motion." *People v. Hernandez*, 283 Ill. App. 3d 312, 316, 669 N.E.2d 1326, 1329 (1996).

The due date for the filing of a postconviction petition varies depending on several factors. Where a petition for leave to appeal to the Illinois Supreme Court is filed, the petitioner's postconviction petition is due either three years after his conviction or six months after his petition for leave to appeal is denied, whichever is sooner. 725 ILCS 5/122—1(c) (West 1998). However, the Post-Conviction Hearing Act provides a "safety valve" provision for petitioners who do not file in a timely manner. Under this "safety valve" provision, the petitioner may be excused from failing to file in a timely manner if he establishes that he was not culpably negligent in his failure to file on time. 725 ILCS 5/122—1(c) (West 1998).

■ Petitioner first argues that his failure to include allegations in his petition that he was not culpably negligent should not result in summary dismissal under section 122—2.1(a)(2). We agree.

We first note that the plain language of the Post-Conviction Hearing Act does not require that the allegations of a lack of culpable negligence be in the petition. Rather, the statute states that the deadlines given will apply "unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725

ILCS 5/122—1(c) (West 1998). While some courts have construed this to be a requirement that the allegations of lack of culpable negligence appear in the petition itself (*People v. Caraballo*, 304 Ill. App. 3d 288, 290-91, 710 N.E.2d 560, 563 (1999), *vacated by* 187 Ill. 2d 574, 722 N.E.2d 1142 (2000)), others appear to offer a more flexible construction (*People v. Bates*, 124 Ill. 2d 81, 88, 529 N.E.2d 227, 230 (1988) (dismissal of petition as untimely upheld where the petition "was not *accompanied* by \*\*\* such allegations" (emphasis added)); *Caraballo*, 304 Ill. App. 3d at 293, 710 N.E.2d at 564 (Homer, J., dissenting) (stating that it is significant that the legislature "focused on the allegations of the petitioner as opposed to those of the petition")), indicating that the allegations of a lack of culpable negligence need not actually appear in the petition itself.

Moreover, even if it is necessary for the allegations to be included in the petition, petitioner need not allege a lack of culpable negligence at the outset, as the petition may be later amended to include such allegations. *Wright*, 189 Ill. 2d at 11, 723 N.E.2d at 237. The Act provides that the "court may in its discretion make such order as to amendment of the petition \*\*\* as shall be appropriate, just and reasonable and as is generally provided in civil cases." 725 ILCS 5/122—5 (West 1998). Generally, when a party asks to amend a complaint, leave to do so is freely given. "A circuit court abuses its discretion if it refuses to allow a plaintiff to amend his complaint when a cause of action can be stated if the complaint is amended." *Droen v. Wechsler*, 271 Ill. App. 3d 332, 335, 648 N.E.2d 981, 984 (1995).

> "[T]he trial court should exercise its discretion liberally in favor of allowing amendments if allowing the amendment will further the ends of justice. [Citation.] The most important question is whether amendment will be in furtherance of justice, and amendment of defective pleadings should be permitted unless it is clear that the defect cannot be cured thereby. Any doubts should be resolved in favor of allowing amendments." *Cantrell v. Wendling*, 249 Ill. App. 3d 1093, 1095, 620 N.E.2d 9, 11 (1993).

Our supreme court has recently so indicated that a postconviction petition should not be dismissed for failure to allege a lack of culpable negligence in the failure to file in a timely manner if the petitioner is able to amend his petition to include such allegations. In *People v. Wright*, 189 Ill. 2d 1, 11, 723 N.E.2d 230, 237 (1999), our supreme court held that the limitations period is not jurisdictional, but is analogous to a statute of limitations and is to be dealt with as an affirmative defense by the State. Moreover, it may not be raised for the first time on appeal by the State because to do so would deprive the petitioner of an opportunity to avoid dismissal by amending his petition. The court reasoned:

"By not raising this issue until the cause was on appeal, the State has effectively precluded defendant from seeking to amend his petition to allege facts demonstrating that the late filing was not caused by his culpable negligence. While we recognize that section 122—1 requires the defendant to allege the facts demonstrating a lack of culpable negligence, we do not believe that this requirement allows the State to wait until an appeal to raise an affirmative defense that the defendant may be able to avoid by amending his petition." *Wright*, 189 Ill. 2d at 11, 723 N.E.2d at 230, 236.

*Wright* thus indicates that if the petition is unsuccessful due to a failure to include allegations of a lack of culpable negligence, the petitioner must be given an opportunity to amend. The logical implication of this holding is that it is not strictly necessary for the petitioner to plead a lack of culpable negligence until the issue has been raised by the State (or by the court, which may dismiss for lack of timeliness in the initial summary hearing without the State's motion), at which point the petitioner should be allowed to amend his petition.[1]

In this case, however, petitioner did not ask to amend his petition and no motion to amend or amended pleading was filed. However, petitioner did file a motion to reconsider which contained the allegations that he was free from culpable neglect in failing to file his petition in a timely manner. Specifically, the motion to reconsider alleged

---

[1] We also note that a line of cases has recently appeared in the Fifth District which construes our supreme court's holding in *Wright* that the time limitation of the Post-Conviction Hearing Act is not jurisdictional and is analogous to a statute of limitations. This line of cases, relying on *Wright*, states that the time limitation should be considered an affirmative defense which can be waived if not raised by the State. Thus, they hold that "those who initially review *pro se* petitions to determine whether they are frivolous or patently without merit should refrain from summary dismissal based solely on a tardy filing date." *People v. Johnson*, 312 Ill. App. 3d 532, 533, 727 N.E.2d 1058, 1060 (2000); see also *People v. McCain*, 312 Ill. App. 3d 529, 727 N.E.2d 383 (2000). We do not follow these cases, however, because they appear to conflict with our supreme court's statement in *Wright* that in holding that the time limitation was not jurisdictional and thus subject to waiver "we are not limiting the trial court's ability, during the court's initial review of noncapital petitions [citation], to dismiss the petition as untimely." *Wright*, 189 Ill. 2d at 11, 723 N.E.2d at 237; but see *People v. Whitford*, 314 Ill. App. 3d 335, 341, 732 N.E.2d 649, 655 (2000) (holding that the statement in *Wright* allowing summary dismissal as time barred is *dictum* and inconsistent with the reasoning in *Wright*). Furthermore, the First District recently rejected *McCain* and *Whitford* for similar reasons, noting that even if the above-quoted statement in *Wright* is *dicta*, it should still be followed. *People v. Lopez*, 317 Ill. App. 3d 1047 (2000).

that he was placed in segregation from May 26, 1998, until November 25, 1998, and was denied access to his legal materials, including his in-progress petition until February 11, 1999. Despite the label given to it, we find that the court erred in not considering this motion as it would consider a motion to amend the pleadings. The motion to reconsider contained all of the factual allegations necessary to amend the petition. We do not believe that petitioner should be summarily deprived of his ability to pursue postconviction relief simply because he neglected to put the correct label on his motion. See *People v. Stice*, 168 Ill. App. 3d 662, 664, 523 N.E.2d 1054, 1055 (1988) (document entitled "Motion to Dismiss" treated as a motion to suppress because the "court prefers to exalt substance over form").

Moreover, even if the motion to reconsider is not considered to be a motion to amend, petitioner should still be permitted to amend his petition on remand because his motion for reconsideration alleged facts explaining why he was not culpably negligent. The situation presented to the court in *Ogle v. Hotto*, 273 Ill. App. 3d 313, 652 N.E.2d 815 (1995), is closely analogous to the situation in the case at bar. In *Ogle*, the plaintiff's complaint for legal malpractice was filed after the limitations period lapsed. The plaintiff's complaint failed to allege sufficient facts to show that the plaintiff's late filing was attributable to a late discovery of her cause of action so as to come within the discovery rule. The court dismissed the complaint as time-barred and the plaintiff did not file a motion to amend the complaint. The plaintiff did, however, file a motion to reconsider which contained allegations sufficient to satisfy the discovery rule. The court held that where the plaintiff for the first time alleges that the late filing of his claim was attributable to the late discovery of the action by way of a motion to reconsider, the court is obligated to grant leave to amend the complaint to so provide even though no formal request for such leave was made. The court then remanded the case "to allow plaintiff an opportunity to amend her complaint and plead the discovery rule with more specificity." *Ogle*, 273 Ill. App. 3d at 325, 652 N.E.2d at 823.

The case at bar is similar to *Ogle* in that the plaintiff failed to plead his lack of culpable negligence as an exception to a statute of limitations. His complaint was dismissed pursuant to the statute of limitations and he failed to ask for leave to amend but presented the facts supporting the exception for the first time in a motion for reconsideration. Accordingly, if the reasons given in petitioner's motion to reconsider are sufficient we should, as in *Ogle*, remand this matter to permit the petitioner to amend his petition. See 155 Ill. 2d R. 366(a)(5) ("reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgement and make any order

that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require").

We must therefore next consider whether those allegations as presented in his motion to reconsider are sufficient to establish a lack of culpable negligence so as to avoid summary dismissal of his petition on the ground that it was time-barred.

Petitioner next argues that because he was placed in segregation and his property including his in-progress petition was confiscated until after the petition was due, he was not culpably negligent in his late filing of that petition. We agree.

■ The resolution of this issue turns on what is meant by the term "culpable negligence" in section 122—1(c) of the Post-Conviction Hearing Act. Illinois courts have not precisely defined the meaning of "culpable negligence" although it has been observed that the lack of culpable negligence is a difficult standard for a petitioner to overcome. See *People v. Davis*, 312 Ill. App. 3d 1117, 1119, 728 N.E.2d 778, 780 (2000) ("A review of the case law shows that freedom from culpable negligence is very difficult to establish"), *overruled on other grounds, People v. Rissley*, No. 82536, slip op. at 11 (March 15, 2001); see, *e.g., People v. Montgomery*, 45 Ill. 2d 94, 96, 256 N.E.2d 802, 803 (1970) (petitioner culpably negligent even where court found that his psychiatric reports "generally indicate a condition of mental disturbance"); *People v. Lee*, 292 Ill. App. 3d 941, 688 N.E.2d 673 (1997) (incorrect advice of counsel regarding limitations period insufficient to establish a lack of culpable negligence). However, this narrow application of the culpable negligence standard has met significant criticism. See *People v. Perry*, 293 Ill. App. 3d 113, 118, 687 N.E.2d 1095, 1098-99 (1997) (Zwick, J., dissenting) ("the courts have universally emasculated the 'absence of culpable negligence' language in the statute" which "effectively nullifies the intent of the legislature as expressed in the clear statutory language"); see also *People v. McClain*, 292 Ill. App. 3d 185, 190-93, 684 N.E.2d 1062, 1065-67 (1997) (Green, J., dissenting). Furthermore, our courts have held that even though the standard is high, it should not be so high as to eviscerate the provision of the Act allowing for late filing where culpable negligence is not present. *Davis*, 312 Ill. App. 3d at 1119, 728 N.E.2d at 781 (reversing trial court's finding of culpable negligence and holding that the culpable negligence standard "should not *** be so difficult as to render the provision a nullity").

Our analysis of the plain meaning of the term "culpable negligence" is consistent with the holding in *Davis* that the standard should not be impossibly high. While our courts have not defined "culpable negligence," our courts have defined "negligence" in other contexts as

"the failure to do something which a reasonably careful person would do, or doing something which a reasonably careful person would not do." *Vinke v. Artim Transportation System, Inc.*, 87 Ill. App. 3d 400, 406, 408 N.E.2d 1112, 1117 (1980); accord *Hack v. New York, Chicago, & St. Louis R.R. Co.*, 27 Ill. App. 2d 206, 216, 169 N.E.2d 372, 376 (1960); Black's Law Dictionary 1032 (6th ed. 1990).

However, the Act does not merely refer to "negligence" but to "culpable negligence" and the word "culpable" must be held to mean something. *People v. McClain*, 292 Ill. App. 3d 185, 190, 684 N.E.2d 1062, 1066 (1997) (Green, J., dissenting) ("No word in a statute should be deemed meaningless"); accord *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111, 610 N.E.2d 1250, 1253 (1993) ("no word or paragraph [of a statute] should be interpreted so as to be rendered meaningless"). The dictionary defines "culpable" as "[r]esponsible for wrong or error; blameworthy." American Heritage Dictionary 348 (1982); see also *Collins*, 155 Ill. 2d at 111, 610 N.E.2d at 1253 (statutory language "is to be given its plain or ordinary and popularly understood meaning").

Thus, we conclude that by defining the standard as a lack of "culpable negligence," the legislature intended to hold petitioners to a lower degree of care than mere negligence. In other words, to be "culpably negligent," a petitioner would need to be more than merely negligent. *McClain*, 292 Ill. App. 3d at 190-91, 684 N.E.2d at 1066 (Green, J., dissenting) ("In using the word 'culpable' as an antecedent to the word 'negligence' in section 122—1 of the Act, the General Assembly must have intended to refer to a type of negligence that is quite severe").

Courts of other states that have defined "culpable negligence" in similar contexts appear to have reached similar conclusions. In *Holway v. Ames*, 100 Me. 208, 60 A. 897 (1905), the Supreme Judicial Court of Maine defined "culpable neglect" in an analogous context as "less than gross carelessness, but more than the failure to use ordinary care." *Holway*, 100 Me. at 211, 60 A. at 898.

The term "culpable negligence" has also been defined by many courts in many other, less analogous contexts. However, the thread running through all of these definitions is that "culpable neglect" is something more than mere neglect or more than a mere failure to use ordinary care. See, *e.g.*, *Ross v. Baker*, 632 So. 2d 224, 226 (Fla. App. 1994) ("Culpable negligence is negligence of a gross and flagrant character which evinces a reckless disregard for the safety of others"), *implied overruling on other grounds*, *Stucki v. Hopkins*, 691 So. 2d 560 (Fla. App. 1997); *State v. Giordano*, 138 N.H. 90, 95, 635 A.2d 482, 484 (1993) ("Culpable negligence is something more than ordinary

negligence, mere neglect, or the failure to use ordinary care—it is negligence that is censorious, faulty or blameable"); 1 R. Rawle, Bouvier's Law Dictionary 736 (3d rev. 1914) ("culpable neglect would seem to convey the idea of neglect for which he was to blame as is ascribed to his own carelessness, improvidence or folly").

■ In light of the preceding discussion of the meaning of "culpable negligence," it would seem that where a prisoner is prevented by the actions of prison authorities from filing his petition on the last timely day, he is not culpably negligent. Where a prisoner is placed in segregation and such segregation is not the foreseeable result of his own misconduct, it is as if the deadline for the filing of the petitioner's petition was moved up to the date on which he was placed in segregation without warning or notice.[2] A prisoner's failure to file on time can hardly be considered to be "more than the failure to use ordinary care" (*Holway*, 100 Me. at 211, 60 A. at 898), or "negligence of a gross and flagrant character" (*Ross*, 632 So. 2d at 226), where he is precluded from filing by the acts of his prison custodians. This is consistent with the prior statements of our court that "in cases where the record contains evidence that the lock-down prevents a defendant from having a 'meaningful opportunity' to prepare a timely postconviction petition, the delay is not the result of the defendant's culpable negligence." *People v. Van Hee*, 305 Ill. App. 3d 333, 337, 712 N.E.2d 363, 367 (1999); accord *Mitchell*, 296 Ill. App. 3d at 933, 696 N.E.2d at 367; see also *Rissley*, slip op. at 9 (citing *Van Hee* and *Mitchell* with approval).

Thus, we hold that where a petitioner who has begun work on a postconviction petition is placed in segregation through no foreseeable fault of his own or otherwise prevented from filing his petition for a period of time until and including the last day of the period in which he may timely file, his failure to file in a timely manner is not culpable negligence. To hold otherwise would mean, for example, that a petitioner who completed a petition even several months before it was due and was placed in segregation immediately after finishing the petition but before he was able to file it and remained unable to file it until after the deadline would be culpably negligent. Under *Van Hee*, *Mitchell* and *Davis*, such a holding would be unduly harsh, flaunt the plain meaning of the term "culpable negligence" and set the standard for late filing so high as to "render the provision a nullity" (*Davis*, 312 Ill. App. 3d at 1119, 728 N.E.2d at 780). *Van Hee*, 305 Ill. App. 3d at 337, 712 N.E.2d at 367; *Mitchell*, 296 Ill. App. 3d at 933, 696 N.E.2d at 367.

---

[2]Whether petitioner was required to plead that segregation was not the result of his own misconduct is discussed below.

In the case at bar, petitioner was placed in segregation by prison authorities on May 26, 1998, and had his petition and other property confiscated after he began work on his petition. He remained in segregation until November 25, 1998, well after his petition was due.[3] Furthermore, petitioner's property, including the in-progress petition, was not returned to him until February 11, 1999, due to its being misplaced by prison officials. Because of his segregation status and because his property was taken from him, petitioner was not able to file his petition on any date after the date he was placed in segregation. Thus, the filing date for his petition was effectively moved forward to the day he was placed in segregation.

The cases cited by the State in opposition to this holding are clearly distinguishable. In *People v. Perry*, 293 Ill. App. 3d 113, 687 N.E.2d 1095 (1997), the court held that the petitioner was culpably negligent in filing his petition late. The petitioner in *Perry* gave two reasons for his delay in filing his petition: (1) the prison handbook stated that he had 10 years in which to file while the legislature had changed the period to three years; and (2) that the fact that the prison was on lockdown restricted his access to the prison library. *Perry*, 293 Ill. App. 3d at 116, 687 N.E.2d at 1097. The court rejected the first argument, stating that as the petitioner had not presented evidence that the prison library did not contain accurate information regarding the time period for filing a petition he failed to show that he was not provided with accurate information. The court also rejected the second argument because there were several month-long periods when the prison was not on lockdown giving the petitioner ample time to prepare his petition and to access the library.

*Perry* is distinguishable from the case at bar for two reasons. First here, unlike in *Perry*, the effective change in the deadline for filing did not occur because of a statutory change. Prisoners (like other litigants) are held responsible for knowing the law (which is a matter of public record, accessible in a law library). It is quite another thing to hold

---

[3]Petitioner contends that his petition was due on August 29, 1998, while the State contends the petition was due on June 7, 1998. Both parties agree that the petition was due three years after petitioner was found guilty. Petitioner maintains that the three-year period should be counted from the date of the entry of his sentence while the State contends that the period should begin on the date of conviction. Our supreme court has recently held in accordance with petitioner's position that the period begins on the date that the final judgement including sentence is entered. *People v. Woods*, 193 Ill. 2d 483, 739 N.E.2d 493 (2000). However, this issue is of no moment here, as either way petitioner was in segregation for at least the last seven days before his petition was due and beyond.

that a prisoner is nevertheless responsible, where his segregation status is not the foreseeable result of his own conduct, for knowing in advance the minds of prison officials as to when and how long he will be placed in segregation. Secondly, while petitioner in this case was not in segregation for the entire time before his petition was due, there is nothing in *Perry* to indicate that the prison was on lockdown on the date which the petition was due. Thus *Perry* does not present a situation where the deadline for the filing of the petition was effectively advanced due to the lockdown or segregation status of the prisoner. Rather, the issue in *Perry* was lack of access to the law library due to lockdown, which is not at issue here.

*People v. Mitchell*, 296 Ill. App. 3d 930, 696 N.E.2d 365 (1998), is also distinguishable. In *Mitchell*, the petitioner argued that he was not culpably negligent in filing his postconviction petition 5½ months late because the penitentiary was frequently on lockdown while he was incarcerated and he was not able to visit the law library during those lockdown periods. The court found that the petitioner was culpably negligent because during the six-month period in which petitioner had to file the petition, the penitentiary was only locked down 51 out of 171 days, leaving the petitioner 120 days to prepare his petition.

*Mitchell* is distinguishable for several reasons. First, in the case at bar, petitioner's argument is not based on a lack of access to the law library, as it was in *Mitchell*. As an initial petition for postconviction relief does not require citation to legal authority (*Mitchell*, 296 Ill. App. 3d at 933, 696 N.E.2d 367) a petitioner's claim, as in *Mitchell*, of delay due to lack of access to a law library is particularly dubious. Second, there is no indication that the petitioner in *Mitchell* was in segregation or on lockdown for the week before his petition could have been filed, as is the case in the cause at bar.

The State also argues, however, that petitioner's segregation status was probably attributable to his own misconduct rather than the actions of prison authorities alone. The State apparently contends that petitioner was required to allege that his segregation status was not attributable to his own misconduct in order to meet his burden of alleging a lack of culpable negligence, something which he did not do. The State cites no authority for this proposition; however, this is an issue of first impression and we find that the State's position has some merit. Prisoners are required to allege that they are free from culpable negligence in failing to file in a timely manner. If a petitioner was placed in segregation due to his own misconduct, then his failure to file in a timely manner due to his segregation status could well constitute culpable negligence. Engaging in intentional misconduct which would, with reasonably foreseeable certainty, result in prison action

that would prevent one from filing in a timely manner would in all likelihood fall within the definition of culpable negligence as "negligence of a gross and flagrant character." Thus, where segregation is at issue, the petitioner must allege that his placement in segregation was through no fault of his own.

While we may agree in principal that a petitioner must allege that his presence in segregation was not a result of his own culpable negligence, we hesitate to hold the petitioner in this particular case to this pleading standard. We have reached this question as an issue of first impression and thus petitioner had no precedent on this issue to inform him of the necessity of alleging that he was not in segregation due to his own misconduct. Thus, we will remand in order to afford him an opportunity to amend his petition to so allege. See 155 Ill. 2d R. 366(a)(5) ("reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgement and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require"); *Geaslen v. Berkson, Gorov & Levin, Ltd.*, 155 Ill. 2d 223, 230, 613 N.E.2d 702, 705 (1993) (holding that it was inappropriate to affirm dismissal of complaint on the basis of a correctable defect not raised below where plaintiffs would likely have been granted leave to amend if the defect had been raised below); see also *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 636 N.E.2d 616 (1993).

■ Petitioner next contends that because the court failed to rule on the merits of his petition within 90 days, but rather dismissed his petition for lack of timeliness, his petition is not subject to summary dismissal on remand because the court loses its authority to summarily dismiss a petition if it fails to address the merits within the 90-day period. We disagree.

The Post-Conviction Hearing Act provides that when a petition is filed the court must examine the petition within 90 days. 725 ILCS 5/122—2.1(a) (West 1998). If the case is not a death penalty case and the petition is frivolous or patently without merit, the court may summarily dismiss it without further proceedings. 725 ILCS 5/122—2.1(a)(2) (West 1998). If the court does not dismiss the petition within the 90-day period, it must be docketed for further consideration. 725 ILCS 5/122—2.1(b) (West 1998). However, neither petitioner's brief nor our research has revealed any authority indicating that summary dismissal must be on the merits in order to comply with the 90-day period. In fact, our supreme court has indicated that a petition may be summarily dismissed as time-barred. *Wright*, 189 Ill. 2d at 11, 723 N.E.2d at 237. Thus, we hold that the trial court's summary dismissal of the petition on the grounds that it was time-barred satisfied the

requirement of section 122—2.1(a) that it dismiss the petition within 90 days.

Nor do we agree with petitioner's argument that because the 90-day period in which his petition was subject to summary dismissal has expired, his petition will not be subject to summary dismissal on remand. This cause is remanded for the purpose of allowing petitioner to amend his petition and our supreme court has held that when a petition is amended the 90-day summary dismissal period begins to run anew. *People v. Watson*, 187 Ill. 2d 448, 451, 719 N.E.2d 719, 720 (1999) ("when a defendant who has filed an original post-conviction petition subsequently files an amended petition, the 90-day period in which the court must examine the *** petition *** is to be calculated from the filing of the amended petition"). Thus, on remand, once the amended petition is filed, the 90-day period will begin to run and the petition will once again be subject to summary dismissal by the trial court pursuant to section 122—2.1(a)(2).[4]

■ Petitioner next argues that his sentence is subject to collateral attack because the statute under which he was sentenced, section 5—8—1(a)(1)(b) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(1)(b) (West 1998)), is unconstitutional under the recent United States Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Since *Apprendi* was decided after his conviction became final, petitioner contends that *Apprendi* should apply retroactively to postconviction proceedings. We find that *Apprendi* does not apply retroactively to postconviction proceedings and that petitioner thus is unable to challenge his sentence under *Apprendi*.

In *Apprendi* the Supreme Court held that the defendant's sentence pursuant to a New Jersey statute providing for enhanced sentencing of defendants whose crimes were motivated by racial bias was unconstitutional. This determination was predicated on the fact that under the statute the determination of bias was made by the court rather than the jury. The *Apprendi* Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

---

[4]We note that it is the amendment of the petition which starts the new 90-day period, not our remand. An appeal does not toll the original 90-day period. See *People v. Vasquez*, 307 Ill. App. 3d 670, 673, 718 N.E.2d 356, 358 (1999) ("the 90-day rule of section 122—2.1(a) is mandatory, and the filing of a notice of appeal does not toll or extend the provisions of that section"). The *Vasquez* rule is of no help to petitioner, however, because it is only by amending his petition on remand that his cause may further proceed as we have held that his petition in its present form should not survive summary dismissal.

jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Petitioner in this case was sentenced pursuant to section 5—8—1(a)(1)(b) of the Unified Code of Corrections, which like the New Jersey statute at issue in *Apprendi* provides for enhanced sentencing in the event the court finds that certain facts are established. Normally a conviction for first degree murder results in a sentence of 20 to 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 1992). However, section 5—8—1(a)(1)(b) states:

> "[I]f the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or, except as set forth in subsection (a)(1)(c) of this Section, that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment." 730 ILCS 5/5—8—1(a)(1)(b) (West 1992).

Petitioner thus contends that because his sentence is outside the 20- to 60-year range and because it was so enhanced upon a factual determination that was not made by a jury, his sentence is unconstitutional under *Apprendi*. However, the issue of the constitutionality of petitioner's sentence may be addressed only if we determine that *Apprendi* applies retroactively to postconviction proceedings.

The test by which to determine retroactivity was announced by the Supreme Court of the United States in *Teague v. Lane*, 489 U.S. 288, 310, 103 L. Ed. 2d 334, 356, 109 S. Ct. 1060, 1075 (1989). In *Teague* the Court stated that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075. The first exception is that a new rule will apply retroactively if it "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' [Citation.]" *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075. The second exception is for rules that require "the observance of 'those procedures that ... are "implicit in the concept of ordered liberty." ' [Citations.]" *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076. *Teague* was incorporated into Illinois law by our supreme court in *People v. Flowers*, 138 Ill. 2d 218, 237, 561 N.E.2d 674, 682 (1990).

Thus for our purposes we must determine first if *Apprendi* announces a new rule and second whether it falls within an exception to the rule of *Teague* so as to be governed by *Flowers*. While the *Teague* Court did "not attempt to define the spectrum" of what constitutes a

new rule, it did state that "[i]n general *** a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070. Under these criteria there can be no doubt that *Apprendi* announces a new constitutional rule.

Prior to *Apprendi*, sentencing schemes of the type ruled unconstitutional in *Apprendi* had been upheld by lower courts. See, *e.g.*, *Holman v. Page*, 95 F.3d 481 (7th Cir. 1996) (sentencing scheme wherein judge could impose an extended-term or natural life sentence for crimes he found to be brutal and heinous constitutional); *People v. La Pointe*, 88 Ill. 2d 482, 501, 431 N.E.2d 344, 352 (1981) (term "exceptionally brutal or heinous behavior, indicative of wanton cruelty," not unconstitutionally vague); *People v. Williams*, 90 Ill. App. 3d 524, 527, 413 N.E.2d 60, 63 (1980) ("aggravating factors are not necessary elements of the crime charged and need not be alleged in the indictment or proved at trial"); accord *People v. Perez*, 101 Ill. App. 3d 64, 73, 427 N.E.2d 820, 828 (1981). Nor do we find that the Supreme Court's prior decision in *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999), announced the same rule as *Apprendi*. The holding in *Jones*, while similar to the holding in *Apprendi*, was decided as a matter of statutory construction of the federal sentencing guidelines and did not announce a new constitutional rule. The holding that *Apprendi* announces a new constitutional rule was followed in two retroactivity cases decided in Illinois since the promulgation of *Apprendi*. *People v. Kizer*, 318 Ill. App. 3d 238, 249 (2000); *People v. Beachem*, 317 Ill. App. 3d 693, 698-99 (2000); see also *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir. 2000); *United States v. Pittman*, 120 F. Supp. 2d 1263, 1267 (D. Or. 2000).

Having determined that *Apprendi* promulgates a new constitutional rule, we must next evaluate whether it falls within the two exceptions to *Teague* as interpreted by *Flowers*. *Apprendi* does not place any conduct beyond the reach of the law-making authority, so the first exception does not apply. Therefore *Apprendi* may be applied retroactively only if it "requires the observance of those procedures that are implicit in the concept of ordered liberty." *Flowers*, 138 Ill. 2d at 237, 561 N.E.2d at 682. In *Flowers*, our supreme court held that the rule announced in *People v. Reddick* did not "establish[ ] such a component of basic due process so as to fall within" this exception. *Flowers*, 138 Ill. 2d at 242, 561 N.E.2d at 684. The *Reddick* court held that "certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial and that the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the People's burden of proof." *People v. Reddick*, 123 Ill. 2d 184, 198 (1988).

In *People v. Kizer*, 318 Ill. App. 3d 238 (2000), the reasoning of which we adopt, this court held that *Apprendi* may not be applied retroactively to cases pending on collateral review. The *Kizer* court relied on *Flowers* and analogized the holding in *Apprendi* to the holding in *Reddick*. The court stated that the "burden of proof problem in *Reddick* exposed defendants to the danger of deprivations just as unfair as any deriving from the *Apprendi* problem." *Kizer*, 318 Ill. App. 3d at 252. The *Kizer* court thus reasoned that if *Reddick* did not fall within the exception to the *Flowers* rule, neither did *Apprendi*. Numerous other courts have also found that *Apprendi* is not retroactive to cases pending on collateral review. *United States v. Pittman*, 120 F. Supp. 2d 1263, 1271 (D. Or. 2000); *Klein v. United States*, 125 F. Supp. 2d 460, 467 (D. Wyo. 2000); see also *United States v. Gibbs*, 125 F. Supp. 2d 700, 705-07 (E.D. Pa. 2000); *cf. Jones v. Smith*, 231 F.3d 1227, 1238 (9th Cir. 2000).

The opinion in *People v. Beachem*, 317 Ill. App. 3d 693 (2000), eloquently argues that *Apprendi* should apply retroactively to timely filed cases pending on postconviction review; however, we disagree, as does the *Kizer* court, with its conclusion that *Apprendi* is distinguishable from *Reddick*. See *Kizer*, 318 Ill. App. 3d at 252. *Beachem* contends that *Reddick* "did not implicate the right to a jury verdict beyond a reasonable doubt and, consequently, the fundamental fairness and accuracy concerns inherent" in the exception to the *Flowers* rule. *Beachem*, 317 Ill. App. 3d at 705. However, as the *Kizer* court noted, in *Reddick* the jury received instructions that failed to apprise it of the State's burden of proof and the court held that "certain instructions, such as the burden of proof *** are essential to a fair trial." (Emphasis omitted.) *Kizer*, 318 Ill. App. 3d at 251. Thus *"Reddick* did implicate the right to a jury verdict beyond a reasonable doubt." *Kizer*, 318 Ill. App. 3d at 251.

Accordingly, for the forgoing reasons the judgment of the circuit court of Cook County summarily dismissing petitioner's postconviction petition as time-barred is reversed and remanded for further proceedings not inconsistent with this opinion. For the reasons stated above, the attempt to raise *Apprendi* issues through this postconviction appeal is stricken.

Reversed; cause remanded in accordance herewith.

CAHILL, P.J., and McBRIDE, J., concur.